# DISTRICT OF COLUMBIA *v.* PETTY.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 316.   Argued May 8, 1913.—Decided June 9, 1913.

Sureties on the official bond of a public officer are not, in the absence of statutory provisions, responsible for his failure to account for moneys received and held by him extra-officially and not specified in the bond.

Moneys received by the Commissioner of the District of Columbia from citizens for street improvements under the permit system were not public moneys in any legal sense, but funds of private citizens held extra-officially by the public officers.

Prior to the making of the order of June 13, 1888, establishing the Permit Fund there was no law, rule or regulation making the Auditor of the District of Columbia accountable for public moneys, nor is there anything in that order or in the act of March 3, 1891, c. 246, imposing responsibility on the Auditor for faults of the disbursing clerk provided for therein or of the pay clerk referred to in said order.

37 App. D. C. 156, affirmed.

THE facts, which involve the liability of sureties on an official bond and the responsibility of a public officer for moneys other than public, are stated in the opinion.

*Mr. Edward H. Thomas* for plaintiff in error.

*Mr. J. J. Darlington* for defendants in error, Church and Deering.

*Mr. W. C. Sullivan* filed a brief for defendant in error Petty.

*Mr. Jackson H. Ralston, Mr. Frederick L. Siddons* and *Mr. William E. Richardson* filed a brief for defendant in error Wilson.

MR. JUSTICE PITNEY delivered the opinion of the court.

This action was founded upon the official bond of James T. Petty, Auditor of the District of Columbia, given by him and his sureties, bearing date May 1, 1888, and conditioned as follows:

"Whereas, the above bounden James T. Petty has been appointed to the office of Auditor in and for the District of Columbia; Now, therefore, the condition of said obligation is such that if the said James T. Petty shall faithfully and efficiently perform all the duties of his said office, as provided for by law, and the rules and regulations from time to time duly prescribed for the government of the civil service of said District; and shall well and truly pay over, disburse, and account for all moneys that shall come to his hands, as the law and orders governing said service shall require, then said obligation to be void, otherwise to remain in full force."

The Supreme Court of the District sustained a general demurrer to the original declaration, and to several successive amended ones. Upon the last occasion an appeal was taken from the judgment of that court to the Court of Appeals, resulting in an affirmance (37 App. D. C. 156), and the present writ of error was then sued out.

The declaration in its final form sets forth the several acts of Congress under which it was sought to charge the defendant Petty, as Auditor, with the custody of or responsibility for certain moneys mentioned in the several breaches assigned; and also sets forth certain rules and regulations prescribed by the Commissioners of the District concerning the office of Auditor, that are said to impose such responsibility.

If the averments do not show a liability on the part of the Auditor and his sureties, it is no fault of the pleader. The fact is, as was frankly avowed at the Bar, that it was not intended to charge that any of the moneys in question came into the hands of Mr. Petty personally, or were by him misappropriated; that in fact it was the disbursing clerk in the Auditor's office who cashed certain checks and embezzled the proceeds. The theory of the declaration is that Petty, as Auditor, is responsible for the moneys represented by the checks, and bound to make good the defalcation of the disbursing officer; and this because of the character of the duties imposed upon the Auditor in respect of certain funds known as the "Permit Fund," or the "Deposit and Assessment Fund, whole-cost work," etc.

The history of the legislation under which the government of the District was organized and its affairs conducted, down to and during the period covered by this action, is rehearsed in the opinion of the Court of Appeals, and it would serve no useful purpose to repeat it here. The history of the office of Auditor and the peculiar statutes under which it is sought to hold him responsible for

the custody and disbursement of moneys, and other duties aside from those that belong to the office *ex vi termini*, are rehearsed. Certain rules promulgated by an order of the District Commissioners, under date June 13, 1888, are likewise set forth. They have to do with the disposition of moneys deposited with the Collector of Taxes of the District by citizens of the District for (*inter alia*) "Permit Work." Certain duties akin to the normal functions of an Auditor are by these rules imposed upon that officer, among which are the examination of vouchers and pay-rolls prepared by the superintendents of streets and of sewers, respectively, for services rendered or material furnished, payable from the Permit Fund; approval of such pay-rolls and vouchers if found correct; and the making of requisitions upon the Collector of Taxes for the amount thereof. A separate section provides that "Once a month, upon a day regularly set apart for the purpose, the pay clerk of the Auditor's office shall take the rolls thus prepared, with the money necessary to meet the same, repair to the places where the work is being done, and, after proper identifications, and receipt given, pay in cash to each claimant the amount found to be due. He shall give bond with approved security in the sum of five thousand dollars for the faithful performance of the duties required of him." By another section the Auditor is to debit the Collector of Taxes with deposits on account of Permit and License Funds, and credit him with requisitions honored by the Collector. By another section the Auditor is to "Debit himself with the moneys received from the Collector of Taxes upon requisition made as provided in section 1, and credit himself with payments upon vouchers duly certified and approved, as in sections 2 and 7." By § 7, after the work for which a deposit has been made has been completed and paid for, the Auditor is to state the account with the depositor, make requisition upon the Collector for any balance due the depositor,

and repay the same upon presentation of the original certificate of deposit.

The meaning of the terms "Permit Work" and "Permit Fund," is explained in the declaration as follows: "That in the course of administration the Commissioners found it expedient that all work done by the District of Columbia as the result of cuts made in streets, avenues, roads, and alleys in said District, be paid from a fund known as the 'Deposit and Assessment Fund,' which was whole-cost work, and thereupon the said Commissioners, on February 6, 1897, ordered that for convenience in keeping the accounts in cases of repairs made by the District of cuts in pavements and other work done by the District which were paid for from private deposits, a general account be opened, styled 'Deposit and Assessment Fund,' and that all material and labor for such work be charged against said account and be paid by assessment against the deposits made for such purposes."

Until the making of the order of June 13, 1888, there was no law, rule, or regulation making the Auditor of the District accountable for public moneys, and we agree with the Court of Appeals that since there was no statute authorizing the District Commissioners to receive or expend such permit work deposits, the order imposed no liability upon the Auditor's bondsmen, because the moneys received from citizens for street improvements under the permit system, were not public moneys in any legal sense, but funds of private citizens held extra-officially by the public officers.

The act of Congress of March 3, 1891 (26 Stat. 1062, 1064, c. 546), provided for a disbursing clerk, and authorized him to pay laborers and employés of the District "with moneys advanced to him by the Commissioners in their discretion, upon pay-rolls or other vouchers audited and approved by the Auditor of the District of Columbia and certified by the Commissioners as now required by

law." This clerk was made subordinate to the Commissioners, and they were held responsible for his acts and defaults. The declaration avers that this disbursing clerk was the same as the "pay clerk" referred to in the order of June 13, 1888.

Be this as it may, we find nothing in the law, nor in that order, to impose responsibility for the faults of the disbursing clerk upon the Auditor.

Moreover, the breaches assigned in the declaration do not appear to pertain to any of the duties imposed upon the Auditor by any of the laws, or rules, or regulations to which we are referred.

Four of the assigned breaches set up that certain checks, some drawn by the disbursing officer and countersigned by the Auditor, and others drawn by the Auditor, all payable to his order as Auditor and indorsed by him as such, should have been deposited by him, "in accordance with law and the rules governing the conduct of his office," with the Treasurer of the United States; or should, "in accordance with law and the rules and regulations aforesaid," have been deposited in a certain bank as reimbursement of the Deposit and Assessment Fund; or should have been deposited in bank to the credit of Petty as Auditor for the benefit of the whole-cost work, etc.; that in each instance, the checks having been indorsed, were not so deposited, but were cashed and the proceeds never paid or accounted for to the plaintiff, etc. For reasons already mentioned, the pleader has studiously refrained from averring that these checks were cashed by Petty, or that the proceeds thereof in any way came to his hands. The legitimate inference is to the contrary, and that some other official, for whose misconduct Petty was not by law responsible, took the proceeds. For in none of the breaches is the duty attributed to Petty covered by any of the laws, rules, or regulations that are cited. The fifth breach charged, is that Petty, as Auditor, failed to account for

moneys of the District of Columbia which came to his hands, represented by certain specified checks, from funds belonging to the whole-cost work, unlawfully drawn by Petty as Auditor, the checks being payable to the order of Petty "as disbursing agent, Rock Creek Park, D. C."; that these checks and the proceeds thereof were unlawfully used by Petty in his capacity as such disbursing agent, etc., etc. Upon the argument no attempt was made to support this breach, and as it appears to charge duties that are not covered by any of the laws or rules cited, we dismiss it without further mention.

*Judgment affirmed.*