**PARTRIDGE v. PRESLEY.**

No. 10462.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 29, 1950.

Decided April 5, 1951.

Stephens, C. J., dissented in part.

646

Frederick A. Ballard, Washington, D. C., with whom Daniel Partridge, III, and William H. B. Thomas, Washington, D. C., were on the brief, for appellant.

Irving B. Yochelson, Washington, D. C., with whom Solomon Grossberg and Isadore Brill, Washington, D. C., were on the brief, for appellee.

Before STEPHENS, Chief Judge, and WILBUR K. MILLER and PROCTOR, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The United States District Court for the District of Columbia summarily adjudged Mrs. Helen Draper Hoffman liable in damages to Mrs. Grace Partridge for breach of a contract to sell and convey real estate. Then, after hearing evidence, the court awarded damages in the sum of $15,-200, plus title expense. Upon Mrs. Hoffman's appeal, we held a genuine issue of material fact had been presented, so we reversed the summary judgment and remanded the cause. Hoffman v. Partridge, 1949, 84 U.S.App.D.C. 224, 172 F.2d 275.

█ At the conclusion of plaintiff's evidence in the second trial of the case, March 16, 1949, the district judge orally announced he would grant the defendant's motion to dismiss. On March 28, 1949, Mrs. Partridge, the plaintiff, moved for a new trial. Judgment dismissing the action pursuant to the court's oral announcement was entered April 11, 1949. An order overruling the motion for a new trial was filed September 27, 1949. On October 4, 1949, the plaintiff noted an appeal to this court. Both original parties are now dead and the action stands here in the names of their executors as appellant and appellee.

Appellee's argument that the motion for a new trial was premature because it was filed before the actual entry of judgment must be rejected, since Rule 59(b) of the

Federal Rules of Civil Procedure requires a motion for a new trial to be "served not later than 10 days after the entry of the judgment." It is perhaps somewhat unusual practice to move for a new trial before the actual entry of a judgment, but to do so is not forbidden by Rule 59(b).

The appellee also contends the appeal should be dismissed because he says it was not taken within the time fixed by Rule 73(a) of the Federal Rules.[1] His theory is that, even if the motion for a new trial was not premature, it was overruled by the judgment of April 11, with the result that the thirty-day period for appeal then began to run, and ended long before the appeal was noted on October 4, 1949. He bases this contention upon the general principle that the entry of an order inconsistent with granting the relief sought by a motion then pending is a denial of the motion.

█ In support of the application of this principle to the case at bar he cites Mosier v. Federal Reserve Bank of New York, 2 Cir., 1942, 132 F.2d 710. There, as here, the trial judge announced at the conclusion of the plaintiff's evidence that judgment would go for the defendant. There, as here, the plaintiff's motion for a new trial preceded the entry of judgment pursuant to the court's oral announcement. There, as here, a formal order overruling the motion for a new trial was entered some time after the entry of the judgment. But at this point the similarity between the two cases ends. In the Mosier case the court heard argument on the motion for a new trial, endorsed on the papers that the motion "is in all respects denied," and then entered formal judgment for the defendant. Thus, the court clearly intended the judgment to overrule the motion in accordance with the principle cited by the appellee; and the subsequent overruling order was unnecessary, as the Second Circuit held.

1. The Rule provides that an appeal may be taken within thirty days from the entry of the judgment appealed from. The Rule further provides, however,

"* * * The running of the time for appeal is terminated by a timely motion made pursuant to any of the rules hereinafter enumerated, and the full time for appeal fixed in this subdivision commences to run and is to be computed from the entry of any of the following orders made upon the timely motion under such rules: * * * denying a motion for a new trial under Rule 59." 28 U.S.C.A.

In the present case, however, nothing appears to indicate a hearing was had on the motion prior to the judgment of April 11, nor even that the trial judge was then aware of the pendency of the motion for a new trial. This is the distinguishing difference between the two cases. That an order overruling the motion was entered on September 27, 1949, indicates the court had not consciously disposed of the matter by entering the judgment on April 11; so instead of being unnecessary, as was the subsequent order in the Mosier case, the order of September 27 was the first and only disposition of the pending motion.

It follows that the motion of March 28, even though it was filed before the judgment was entered, terminated the running of the time for appeal from the judgment of April 11, and caused the full thirty-day period to commence to run on September 27, when the motion was denied. The appeal noted on October 4 was in ample time. We are thus brought to a consideration of the merits.

▪▪▪ The District Court held the contract void for several reasons,—one being it was impossible for Mrs. Hoffman to comply with the following provision of the contract: "* * * The seller agrees to deliver her permit from the D. C. for the installation of an additional kitchen in the house, making it a two family dwelling."

Mrs. Patridge, who was an experienced real estate dealer, personally prepared the contract by typing certain matter into a printed form. She typed into it that the property was "known as 8 Lenox St. Chevy Chase Md." Yet she also typed on the form the agreement quoted above concerning a conversion permit. It appears, therefore, that although she knew the house was in Maryland, Mrs. Partridge inserted the requirement that a District of Columbia permit to convert the dwelling be delivered to her—an obvious impossibility.

To be sure, the printed form contained this language:

"If the property involved in this contract is located in a jurisdiction other than the District of Columbia, wherever any reference is made to the District of Columbia or any official thereof, the name of the jurisdiction in which the property is located and the proper official thereof is substituted automatically."

But, if it be considered that this printed provision prevails over the deliberately inserted requirement of a District of Columbia permit, so as to cause the typed sentence to be read as requiring a Maryland permit to be delivered, performance was impossible because the house is in a territory restricted by Maryland zoning regulations to one-family dwellings. It is suggested, in opposition to this conclusion, that the Maryland zoning ordinance was neither pleaded nor proved, and that courts do not take judicial notice of municipal ordinances. We point out, in response to the suggestion, that the pretrial order shows the appellee's contention that the property is in a Maryland area zoned for single-family units, and thus shows the presence of that issue. It is true that at the second trial the zoning of the property was not proved, but we observe that at the first trial two witnesses—one testifying for each party— said the house was within an area zoned for single-family houses. We are justified in referring to that evidence because an appellate court takes judicial notice of its own records, particularly of the record on a prior appeal of the same case between the same parties. Franz v. Buder, 8 Cir., 1929, 34 F.2d 353; City of Orlando v. Murphy, 5 Cir., 1938, 94 F.2d 426. Moreover, pursuant to a motion by the appellant made soon after the present appeal was noted, we ordered the record on the first appeal to be treated as part of the record in the present appeal.

In addition, there was no evidence at the second trial that Mrs. Hoffman represented to Mrs. Partridge that she had or could obtain a permit to convert the single dwelling into apartments. At the first trial there was testimony, of doubtful admissibility, that Mrs. Hoffman had told a third person she had a permit. There was no evidence at either trial that she made such a representation to Mrs. Partridge.

At the time of the negotiations between the parties, Mrs. Hoffman had begun the work of converting the dwelling into a two-

family unit, but clearly she had done so without any permit from the Maryland zoning authorities. Mrs. Partridge did not want to take such a chance. She said she wanted "to be sure I had the permit" if she went on with the work of conversion after purchasing the property. That was the reason she inserted the language concerning the permit, which must be construed as requiring a legally effective permit under which the conversion could lawfully be made and maintained. Since the zoning regulations forbade such conversion, the provision inserted by Mrs. Partridge required Mrs. Hoffman to do something which was legally impossible. A violation of a zoning regulation is a misdemeanor. (II Md. Code Ann., Art. 66B, § 8(1939).)

■ The requirement that a valid conversion permit be delivered was not a minor consideration with Mrs. Partridge but was one to which she attached importance. She testified that the right to convert the house into apartments was to her an important element of value. It is to be noted also that the contract contains no express agreement on the part of Mrs. Hoffman to assume the risk of performance, whether possible or not. Certainly the impossibility was not due to her fault. That being so, she is excused from the obligation of doing, and from liability for not doing, that which is made impossible by domestic law. Professor Williston, in his Treatise on the Law of Contracts (v. 6, p. 5418, § 1935, 1938 ed.), says:

"Not every kind of impossibility will excuse a promisor from liability for breach of his promise, even though he does not expressly undertake the risk of impossibility. There are, however, three classes of cases where it is well settled that the promisor will be excused unless he either expressly agreed in the contract to assume the risk of performance, whether possible or not, or the impossibility was due to his fault; * * *.

"(1) Impossibility due to domestic law; * * *."

■ It appears, moreover, that at the second trial Mrs. Partridge made no effort whatever to prove damage. Her omission in this respect doubtless was based on her theory that this court's reversal of the previous judgment required only that the question of Mrs. Hoffman's liability to her be retried; and that, if on the second trial the court should again determine that Mrs. Hoffman was liable in damages under the contract, the judgment of the District Court at the first trial as to the amount of damages would prevail. She relied on this theory in spite of the fact that at the pretrial proceedings held before the second trial the District Court entered an order which included the following:

"The Court of Appeals reversed the judgment on the ground that the motion for summary judgment should not have been granted. Plaintiff now contends that the second trial should be limited to the issue of liability and that if the plaintiff recovers on that issue judgment should be rendered for the amount of damages previously assessed.

"Defendant contends that all issues should be tried. The Pretrial Court holds that since the judgment was reversed the new trial should not be limited to the particular ground on which the Court of Appeals predicated its Opinion, but that in accordance with the usual practice the entire case should be retried."

The pretrial judge was correct in holding all the issues were to be tried again, so Mrs. Partridge's failure to introduce evidence tending to show damage was alone enough to justify dismissal of her suit. It is suggested, with respect to the failure, that no opportunity was given the purchaser to present evidence on the issue of damages before the trial court awarded judgment to the seller upon the theory that the contract was unenforceable. We do not so read the record. The purchaser made no tender of such evidence and indicated no desire to present it.

But if that were not true, and if the evidence adduced at the first trial on the question of damage had been before the District Court at the second, we should be constrained to hold it insufficient to justify an award. Aside from her own evidence on the subject, Mrs. Partridge offered at

the first trial one expert witness who testified the property had a fair market value of $46,500 on June 1, 1946, and another who fixed it at $47,500. The proof also showed, however, that Mrs. Hoffman had purchased the property at an auction either in December, 1945, or January, 1946, for a sum between $26,500 and $26,750. There was no evidence of any repairs or improvements made between the date of purchase and the date of the contract here involved which materially added to the value. Two experts introduced by Mrs. Hoffman fixed the fair market value as of June 1, 1946, at $34,000. Mrs. Partridge testified she had unsuccessfully tried in April or May, 1946, to sell the real estate for $47,000; and that she was even unable to find a purchaser at $34,000, and so decided to make an offer of $32,300 on her own behalf, that being the net amount Mrs. Hoffman would have received had a sale been made at $34,000 and a commission of $1,700 been paid to Mrs. Partridge. On May 23, 1946, Mrs. Hoffman made an actual sale for $34,000 cash.

The amount of Mrs. Hoffman's purchase price, Mrs. Partridge's failure to obtain a purchaser even at $34,000, and the actual sale at $34,000, tend to support the evidence of Mrs. Hoffman's expert witnesses who fixed the fair market value at $34,000. Expert opinion that the fair market value was in the neighborhood of $47,000 could not prevail over the opinion of other experts that it was no more than $34,000 when the latter was supported, as we have seen, by actual occurrences; and so an award of damages based on the unsupported and disproportionately large estimate of Mrs. Partridge's expert witnesses would be clearly erroneous. So, even had the contract been valid, there was no showing of damage to Mrs. Partridge at either the first or the second trial.

Affirmed.

STEPHENS, Chief Judge (concurring in part and dissenting in part).

I concur in the view of the majority that the appeal was taken within time.

As to the disposition of the case on the merits, I dissent:[1] I think that the rulings of the District Court on the basis of which it entered judgment against the appellant (plaintiff below and purchaser of the property in question in the case) and in favor of the appellee (defendant below and seller of the property) were erroneous.

The District Court ruled that the contract was lacking in a material element intended to be included, to wit, the time for performance. This is not borne out by the record. There is no evidence that the parties had agreed upon and intended to include in the contract a definite date. Moreover, the contract as executed, i. e., without the inclusion of a definite date, was, in my view, enforceable. It provided that "Within ———— days from the date of acceptance hereof by the seller, or as soon thereafter as a report on the title can be secured if promptly ordered, and/or survey, if required, the seller and purchaser are required and agree to make full settlement in accordance with the terms hereof." With the blank not filled in, this provision means, it seems to me, that the purchaser and seller were required, and that they agreed, to make full settlement as soon after the date of acceptance by the seller as a report on the title could be secured and/or a survey, if required, made, if promptly ordered. The phrase "if promptly ordered" is to be regarded, I think, as a condition precedent to the effectiveness of the seller's obligation. It is true that the provision is inexplicit as to whose duty it was to perform the condition. But because thus inexplicit it is subject to parol clarification; and the testimony undisputedly shows that the purchaser was to order the report on the title and that this was in accordance with local real estate practice.

---

1. The executor for the seller was substituted as a party to this action prior to the second trial. The executor for the purchaser was substituted as a party prior to the hearing of the instant appeal. For convenience I shall in this opinion refer to the appellant as the purchaser and to the appellee as the seller.

Acceptance by the seller was on a definite date, May 21, 1946. It follows that the seller was bound—for it is not in dispute that a report on the title was promptly ordered by the purchaser and there is no evidence that a survey was required. The foregoing construction of the contract is reasonable and will make the contract effective. Such a construction is to be favored over one which would render it ineffective. 3 Williston, Contracts § 620 (Rev.Ed.).

The District Court ruled that the contract was void for impossibility of performance. The theory of the court in this respect was, first, that the contract required the seller "to deliver her permit from the D. C. [District of Columbia] for the installation of an additional kitchen in the house, making it a two family dwelling," but that the property was located in Maryland and that therefore a permit from the District of Columbia would be of no avail. But the contract also provided that "If the property involved in this contract is located in a jurisdiction other than the District of Columbia, wherever any reference is made to the District of Columbia or any official thereof, the name of the jurisdiction in which property is located and the proper official thereof is substituted automatically."

The theory of the court in respect of impossibility of performance was, second, that the property was located in a Maryland district restricted by zoning to single-family detached dwellings and that, therefore, the permit—to convert the property into a two-family dwelling—called for by

the contract was not obtainable, assuming that the clause in the contract requiring delivery by the seller of "her permit" should be read as requiring delivery of a valid permit. From this premise the court reasoned that the purchaser could have avoided the contract, had she desired to, because the seller was unable to supply such a permit, and the court then concluded that the seller could also avoid the contract because it was lacking in mutuality of obligation. I think this reasoning and conclusion without force. In the first place, the seller's answers to the purchaser's complaint in the instant case neither pleaded nor cited a zoning ordinance,[2] and I find no proof of such an ordinance in the record of either the first or the second trial[3]—assuming that this court can properly consult the record in the earlier trial and assuming that the trial court could consider that record. The trial court could not, therefore, properly enter a judgment in favor of the seller upon the theory that such a zoning ordinance existed and was a bar to the purchaser's suit for damages for breach of the contract of sale, because in the absence of pleading and proof of such an ordinance the trial court could judicially know nothing of it. Courts do not take judicial notice of municipal ordinances; they must be pleaded and proved. Gardner v. Capital Transit Co., 80 U.S.App.D.C. 297, 152 F.2d 288 (1945), certiorari denied 327 U.S. 795, 66 S.Ct. 824, 90 L.Ed. 1021 (1946); District of Columbia v. Petty, 37 App.D.C. 156 (1911), affirmed 229 U.S. 593, 33 S.Ct. 881, 57 L. Ed. 1343 (1913); Carras v. Birge, 211 S.

2. It is of interest to note that the amended answers of the seller of December 2 and December 9, 1946, do plead that the property in question in the case is in an area restricted by *covenant* to single-family dwellings; but the record contains no proof of this.

3. Not even in the brief of the seller on this appeal is there a citation to such an ordinance, although that brief makes the contention that such an ordinance exists. The brief attempts to support this contention by reference to two items of evidence contained in the transcript of the first trial. One of these items was testimony by a real estate expert that the

neighborhood in question was exclusively single-family. The second item was the testimony of another witness engaged in the real estate business that he was familiar with the zoning of the area and that so far as he knew it was restricted to one-family dwellings. Assuming that the trial court in the second trial could properly consider these items of evidence (there is no showing that it did consider them) they do not properly establish the existence and terms of a zoning ordinance. The provisions of such an ordinance must be shown by an authenticated copy thereof. 2 Jones, Evidence, §§ 503, 504 (4th ed. 1938)

W.2d 998 (Tex.Civ.App.1948). Moreover, I do not think it proper for this court to consider the evidence introduced at the first trial because, as the majority states, the decision of this court on the first appeal was correctly construed by the pretrial judge upon the remand as requiring all of the issues to be tried again. I think this court should abide by its remand and review the case on the record made by the trial court in the second trial alone. I find nothing to show that the trial court considered the record of the first trial and I think that it could not properly have done so, again because of the terms of the remand. In the second place, even if it be assumed that there was in existence a zoning ordinance forbidding the construction of two-family dwellings in the area in which the property involved in the instant case is located, it does not appear that the existence of such an ordinance required a judgment in favor of the seller. In the contract itself the seller agreed to deliver "her permit." This is a distinct representation that such a permit existed. Also there was evidence in the second trial of words and conduct by the seller which in effect constituted a representation to the purchaser from which she might reasonably infer that a permit to convert the property into a two-family dwelling had been obtained.[4] If, as a matter of fact, no permit had been obtained by the seller, her representation thus to the contrary, if intentional, amounted to an actually fraudulent inducement and, if negligent, to a constructively fraudulent inducement to the purchaser to enter into the contract. Smith v. Richards, 13 Pet. 26, 10 L.Ed. 42 (U.S. 1839); 23 Am.Jur. Fraud and Deceit § 4. A contract induced by fraud is voidable at the option of the innocent party, but the guilty party cannot take advantage of his own fraud to avoid his obligation under the contract should the innocent party choose to enforce it. This proposition is so elementary that a citation of secondary authorities is sufficient. 5Williston, Contracts § 1488 (Rev.Ed.); 12 Am.Jur. Contracts § 146; 17 C.J.S., Contracts, § 166. Accordingly, if the purchaser in the instant case desired to accept the property without a permit to convert it into a two-family dwelling, i. e., to accept less than that which was promised, she had a right to do so; and if the seller by conveying the property to an innocent third party made specific performance of the contract impossible, then the seller must respond in damages.

The point is made that the failure of the purchaser in the second trial to introduce proof of damages for breach of the contract justifies dismissal of the action. But it appears from the record that no opportunity was given the purchaser to present evidence on the issue of damages before the trial court awarded judgment for the seller upon the theory that the contract was unenforceable.[5] Moreover, if refer-

4. The purchaser stated under cross examination: "In that conversation with Mrs. Hoffman [the seller] when I first phoned her, the first time I ever spoke to her she said she was living in the house and converting it into apartments. . . ."

Again, on crossexamination, the purchaser testified:

"Q. You didn't inquire as to zoning? A. No, I didn't, I never did.

\* \* \*

"Q. Now, was the ability to convert this house an important element as to its value? A. To me personally it was, but I don't think it would be to everybody.

"Q. Why, then, before you made a contract, didn't you inquire into it? A. I couldn't tell you why I didn't but I didn't. I believe it was because Mrs. Hoffman had already started doing it. It never occurred to me she would have started it if she couldn't do it.

"Q. When you saw it in April or May, 1946, just what had she done about making an apartment out of it? A. She had made a kitchen on the second floor, and there was already one on the first floor, and the utensils in the house to make a third kitchen. I didn't inquire."

5. Counsel for the seller interrupted the presentation of their case by counsel for the purchaser with the remark, "If the Court please, if the testimony that has been adduced thus far by Mr. Partridge, and apparently this is all the testimony he wants to introduce *with respect to liability*, then I move the Court to enter judgment for the defendant on the ground that the testimony of the plaintiff herself has established that this contract is one that is obviously impossible to perform." [Emphasis supplied] A long colloquy between the court and both counsel then

ence by this court to the record of the first trial is proper, as the majority rules, to establish the existence and terms or the non-existence of a zoning ordinance, there would appear to be no reason why the record of the first trial is not similarly available to this court on the issue of damages. The record of the first trial contains expert testimony by witnesses called both for the purchaser and the seller on the subject of the fair market value of the property and all of these witnesses testified to amounts in excess of the sale price of $32,300 agreed upon in the contract of sale.[6] There was thus some evidence of damage if the record of the first trial can be consulted. But since this case was remanded on the first appeal for a new trial upon all of the issues and therefore for the taking of evidence anew upon the issue of damages as well as upon the issue of liability, the case, were my view that the seller is liable on the contract to be accepted, should, I think, again be remanded for determination by the trial court of the damages due the purchaser for the seller's breach of contract.

In view of the previous remand and of my view that the case should again be remanded, the following comment is perti-nent. On the previous remand the trial court was directed to resolve the question of the seller's mental capacity to contract. The only finding made by the trial court at the second trial that might be said to relate to this question is that "The defendant was an aged woman and was ill and confined to her bed" on the date the contract was signed. This does not constitute a finding or warrant a conclusion that the seller was without capacity to contract. No such finding or conclusion would appear to be justified in view of uncontradicted testimony in the second trial to the effect that the seller, during her negotiations with the purchaser, was sitting up in bed and was at such times alert, intelligent and understanding. It may be commented further that there was uncontradicted testimony that the seller's son, a lieutenant commander in the Navy, was present during her interviews with the purchaser. In view of this it could hardly be concluded that the purchaser was in a position to take advantage of the seller.[7]

I think, therefore, that judgment should have been entered for the purchaser, and that the judgment entered for the seller should be reversed, and the case remanded for a determination of the purchaser's damages.

ensued as to the proper interpretation of the contract, ending in the court's granting the motion for judgment for the defendant.

6. One of the witnesses for the purchaser testified that as a single-family dwelling the fair market value of the property was $42,500 and as a two-family dwelling, $47,500. Another witness for the purchaser testified to $42,000 as a single-family dwelling and $46,500 as a two-family dwelling. A witness for the seller testified that the fair market value was $34,000 as a single-family dwelling.

7. It may be noted also that counsel for the purchaser, in their brief on appeal and in their oral argument before this court, stated without contradiction that the seller was of approximately the same age as the purchaser. And during the second trial the purchaser stated during her testimony that the seller "was as old as I am."