DIRECTOR OF REVENUE, STATE OF
COLORADO, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 9640.

United States Court of Appeals
Tenth Circuit.

April 1, 1968.

John E. Bush, Denver, Colo., (Duke W. Dunbar and Frank E. Hickey, Denver, Colo., with him on brief), for appellant.

William Kanter, Washington, D. C. (Edwin L. Weisl, Jr., New York City, Lawrence M. Henry, Denver, Colo., and John C. Eldridge, Washington, D. C., with him on brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and HILL, Circuit Judges.

MURRAH, Chief Judge.

In this suit by the United States to foreclose a Small Business Administration chattel mortgage, the only contest is between the United States and the State of Colorado over lien priorities. The state appeals from the judgment adjudicating the priorities in favor of the United States. The United States raises the question of timeliness of the appeal, but invites us to ignore it for decision on the merits. Of course, we cannot do that, for if the appeal is untimely, jurisdiction is lacking and that ends the matter. The question is not free from doubt, but we sustain the appeal.

The essential facts are these: The case was tried to the court in three stages. Pursuant to a hearing in January, 1967, the court entered an order adjudging lien priorities in favor of the United States, but entered no final order. A definitive pretrial order on the foreclosure issues only was thereafter entered. Later and on March 7, the state moved for rehearing or for new trial on the court's assumption of jurisdiction and adjudication of lien priorities. Without ruling on the motion and pursuant to trial on the pretrial order issues, the court entered final judgment on March 17. On April 4, the court entered an order effective March 31 denying the state's motion for rehearing or for new trial on jurisdiction and lien priorities. Notice of appeal was filed May 29, more than sixty days from the final judgment of March 17, but less than sixty days from the order denying the motion for rehearing or new trial. The decisive question is whether a motion for rehearing filed prior to the entry of the final judgment can be said to relate to such judgment; and, if so, whether a final judgment inconsistent with the motion operates to effectively deny the motion by necessary implication thus depriving the court of the power to reconsider the motion at a later date.

Rule 59(b), F.R.Civ.P., expressly provides that "A motion for a new trial shall be served not later than 10 days after the entry of the judgment." And, Rule 73(a) expressly provides that the running of the time for appeal is terminated by timely motion under Rule 59. But, the rules must be liberally construed to effectuate the ends of justice and to promote the consideration of appeals on the merits. Giving effect to the spirit of these rules, we have said that "Where the court has power to further review its judgment, it cannot be said that the judgment is final as long as it is being considered by the court. It makes no difference whether the attention of the court is directed to a further consideration of its judgment by a pleading filed as a matter of right, or by a pleading which has no standing in the case as a matter of law, or springs from the court itself. The fact that the court expresses an intent to further consider the judgment prevents its finality." Suggs v. Mutual Ben. Health & Accident Ass'n, 10 Cir., 115 F.2d 80.

Our case is very much like Partridge v. Presley, 88 U.S.App.D.C. 298, 189 F.2d 645. In that case, as here, the motion for rehearing or new trial preceded the entry of the judgment pursuant to the court's oral announcement. Also as here, the motion for new trial was formally considered and overruled after the entry of judgment. Distinguishing these facts from the Second Circuit case of Mosier v. Federal Reserve Bank of New York, 132 F.2d 710,[1] the Partridge court reasoned that the order overruling the premature motion for rehearing, entered after the final judgment, indicated that the court's final judgment had not consciously disposed of the matter raised by the premature motion. Thus, "instead of being unnecessary, as was the subsequent order in the Mosier case, the order * * * was the first and only disposition of the pending motion." Partridge v. Presley, supra, 189 F.2d 647. The Fifth Circuit has followed this reasoning to the effect that a motion for new trial filed before the entry of the judgment, not disposed of either expressly or by necessary implication by the final judgment, operates to terminate the running of the time for taking an appeal although it was not formally overruled until after the judgment. See United States v. Pan American World Airways, Inc., 299 F.2d 74.[2]

Our attention is directed to Miller v. Shell Oil Co., 10 Cir., 345 F.2d 891, in which we declined to give effect to a "Motion for Reconsideration" filed before the entry of the final judgment on the grounds that the order of dismissal with such motion pending reflected the overruling of the motion "regardless of what action was later taken by the court upon it." We are also cited the Ninth Circuit case of Agostino, et al. v. Ellamar Packing Co., 191 F.2d 576, 13 Alaska 34, wherein the court refused to give effect to a "Motion for Reconsideration" filed prior to final judgment, and the Eighth Circuit case of Cohen v. Curtis Publishing Company, 333 F.2d 974, wherein the court, quoting from Agostino and Mosier, refused to consider a motion to amend an order for summary judgment entered before the judgment. We think, however, that each of these

---

1. In Mosier the judge conducted a hearing on the premature motion at the conclusion of which he endorsed upon the motion papers, "This motion is in all respects denied and I shall proceed to pass upon the proposed findings of fact and conclusions of law and objections thereto." On the same date the judge signed a decree dismissing the complaint. More than a month later he signed a formal order denying the motion. From this the Court of Appeals concluded that the motion "was in fact denied by * * * endorsement of the motion papers and * * * signing of the decree * * *."

2. The case was finally reversed, but the Supreme Court said nothing regarding the timeliness of the appeal in the Court of Appeals. See Gondeck v. Pan American Airways, 382 U.S. 25, 86 S.Ct. 153, 15 L.Ed.2d 21. We take this to be an implied affirmance of the jurisdictional question.

cases is distinguishable upon its own peculiar facts. In Miller the court was confronted with a "confusing record" of numerous pleadings filed both before and after the final judgment. The motion for reconsideration related back and was intended to be supplementary to the appellant's reply to a motion to dismiss. It did not purport to request a reconsideration of the final order of dismissal. In ruling that the motion had no efficacy, we did not consider, hence could not have disagreed with the established case law flowing from Partridge v. Presley, supra. Similarly, in Agostino, the court (assuming that a motion for new trial may be filed prior to entry of judgment) was of the opinion that under the facts of the case the motion to reconsider "was in no sense a motion for new trial or a motion to amend the findings of fact, the denial of which would extend the time for appeal." Id. 191 F.2d 577. The Cohen court treated its motion as directed to deletion of the word "wrongfully" from the judgment and held that the "motion * * * presented no * * * substantial issue of fact or law * * * as would justify this court, in the interest of justice, overlooking * * * disregard of the time rule." Id. 333 F.2d 978.

Here the motion for rehearing did relate back to the prior adjudication of lien priorities and the final judgment of the court did reaffirm the prior adjudication. The final judgment thus had the effect of overruling the motion in the sense at least that it reaffirmed the interlocutory adjudication. But, it is also too clear for doubt that the trial court considered the motion for rehearing as going to its final judgment and raising a substantial issue of fact and law on the question of lien priorities. We can see no good reason for saying that in these circumstances the court was powerless to so consider the motion as timely under Rule 59(b).

Background facts are necessary to an understanding of the remaining jurisdictional issues as well as whatever merit there may be to the substantive issues asserted here. Ray J. Williams and his wife Betsy owned and operated the Puebloan Motor Hotel in Pueblo, Colorado. In 1964 they borrowed $350,-000 from the Small Business Administration for which they executed a promissory note secured by a chattel mortgage upon personal property used in connection with the business. In addition and as further security for the promissory note, the Williamses executed a Deed of Trust for the benefit of the SBA covering the real property of the motel. All of these instruments were placed of record on May 12, 1964. Thereafter, in April, 1965, the Williamses sold the Puebloan to C. G. & R. Investments, a corporation, who assumed and agreed to pay the unpaid balance due on the promissory note. C. G. & R. failed to withhold, earmark or remit the Colorado sales and withholding taxes due for late 1965 and early 1966, and after proper demand, the Director of Revenue of the State of Colorado procured a warrant for distraint against the motel personal property. On April 14, 1966, pursuant to warrant, the Director padlocked the restaurant and bar of the motel, apparently as constructive seizure of the personal property therein. Meanwhile, the payments on the SBA loan became delinquent, and on April 20, 1966, this action by the United States in behalf of the SBA was instituted seeking judgment on the unpaid balance and a decree of foreclosure in satisfaction thereof. The trial court stayed the sale by the Director of any of the property of the motel in satisfaction of the unpaid taxes and thereafter adjudicated the priorities of the liens decreeing that "the matter is a federal question" and "under federal law the rule is 'first in time, first in right'." On this basis the court entered its final judgment to the effect that the SBA was entitled to a money judgment against the Williamses and C. G. & R. and was entitled to foreclose its first lien on the property of the motel and have it sold to satisfy the money judgment; that the Director also

held a valid lien against the personal property of the debtor and was entitled to proceed against certain property not encumbered by the SBA's first lien and was further entitled to any excess derived from the sale of the other personal property after satisfaction of the SBA's judgment.

The Director first attacks the jurisdiction of the trial court to hear and determine the controversy asserting that the matter could properly be heard only by a three-judge court under the provisions of 28 U.S.C. § 2281. That statute provides that

> "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute * * * shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges * * *."

The argument seems to be that the Colorado Statutes grant the Director a first lien on all personal property of a taxpayer with authority to seize said property in satisfaction of unpaid taxes, i. e. see C.R.S. 138-1-68; 138-5-36; that any prevention of such lien and seizure by the Director would have the effect of restraining enforcement of the state statutes; and that the matter in controversy must, therefore, be heard and determined only by a three-judge court.

■ The short answer is, of course, that no one here seeks to declare the Colorado statutes unconstitutional or to enjoin the collection of taxes thereunder. The only question is one of priorities, i. e. whether the federal "first in time, first in right" rule or the state "tax priority" provision shall control. The Director concedes that this amounts to no more than a contest between the federal supremacy clause and a state statute. And, it is settled that suits resting on the supremacy clause alone are not within the purview of § 2281.

See Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194.

■ The Director next asserts that by reason of 28 U.S.C. § 1341 the district court was without jurisdiction to suspend the collection of the state tax when a speedy and efficient remedy is provided by the Colorado statutes, i. e. see C.R.S.1963, 138-9-3.

Here again, no one seeks to suspend the collection of the state taxes. Indeed, it seems to be conceded that the taxes are valid, due and owing, and unpaid. The SBA seeks only to limit the source from which the taxes may be collected.

■ Conceding jurisdiction arguendo, it is insisted that the district court had no power or authority to appoint a receiver nor to order the Director to turn over the seized property to him. The argument is to the effect that the receiver could acquire no greater interest in the property than vested in the debtor, and the debtor was not entitled to a return of that property held by the Director. While logical on its face, this argument cannot withstand the force of reason. The SBA chattel mortgage and Deed of Trust expressly authorized the appointment of a Receiver, and such contractual rights were undoubtedly enforceable in the district court, i. e. see United States v. Queen's Court Apartments, Inc., 9 Cir., 296 F.2d 534. And, necessarily incident thereto is the power of the court to direct a receiver to take and hold property pending a determination of priorities thereto.

This brings us to the so-called substantive question in our case, i. e. whether the trial court properly determined that the SBA lien is entitled to priority over the Colorado tax liens. The crux of the Director's argument is that 15 U.S.C. § 646 subordinates the SBA lien to the tax liens of the state. That section provides in pertinent part that

> "Any interest held by the Administration in property, as security for a loan, shall be subordinate to any lien on such property for taxes *due on the property* to a State, * * * in any

case where such lien would, under applicable State law, be superior to such interest if such interest was held by any party other than the United States."

We are urged to construe this section to mean that taxes "due" on property are taxes "owing on, payable from, or enforceable against the property". Under this construction, the Colorado taxes would be "enforceable against" the property of the motel and would thus be prior to the SBA lien.

■ After careful consideration of this argument, the trial court was of the view that § 646 is inapplicable to the sales and withholding taxes at hand. Judge Doyle interpreted the case of In re Lehigh Valley Mills, Inc., 3 Cir., 341 F.2d 398, to construe § 646 to "relate to ad valorem property taxes only and not to interests such as those which are now asserted by the Director of Revenue." He also noted that in the later case of United States v. Clover Spinning Mills Co., 373 F.2d 274, the Court of Appeals for the Fourth Circuit reversed the district court's broad interpretation of § 646 and limited it to liens arising from property taxes. A careful reading of these cases convinces us that Judge Doyle's interpretation is correct; that § 646 is inapposite here; and that the language relied upon by the Director "merely emphasizes the applicability of § 646 to property taxes."

■ Alternatively, it is argued that even if § 646 does not provide for primacy of the state liens the Colorado Statutes do so provide. It is conceded that federal law controls the relative rights of an instrumentality of the federal government, i. e. see Southwest Engine Company v. United States, 10 Cir., 275 F.2d 106, unless federal law makes state law applicable, e. g. see United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404. It is also conceded that "many Circuit Courts have applied the first in time, first in right rule for the benefit of SBA". And see Southwest Engine Company v.

United States, supra, and cases cited; In re Lehigh Valley Mills, Inc., supra. But, it is urged that in light of the decision in United States v. Yazell, supra, this rule is improperly applied on behalf of the SBA, and the proper rule would be the application of state law.

In Yazell the Supreme Court applied the state rule in determining whether the SBA could collect on its loan from Mrs. Yazell. The Director argues that the Supreme Court looked to the state rule because of "(1) Absence of Congressional specification of a federal rule * * * thereby requiring SBA to comply with state law; and (2) the state's public policy to be served in subordinating the SBA's claim to state law." We are urged to apply these principles in determining the priorities here. But, as we read Yazell, contrary to the Director's contentions, the decision was not based upon absence of congressional specification and overriding state public policy. Rather, the court was concerned with the peculiar field of family relations in which the state has a paramount interest, and the narrow issue before it was "whether the Federal Government may voluntarily and deliberately make a negotiated contract with knowledge of the limited capacity and liability of the persons with whom it contracts, and thereafter insist, in disregard of such limitation, upon collecting (a) despite state law to the contrary relating to family property rights and liabilities, and (b) in the absence of federal statute, regulation or even any contract provision indicating that the state law would be disregarded." The court was careful to point out that "this was a custom-made, hand-tailored, specifically negotiated transaction. It was not a nation-wide act of the Federal Government, emanating in a single form from a single source." Id. 382 U.S. 347–348, 86 S.Ct. 504.

■ Such special considerations are obviously not before us here. And, we are constrained to agree with the trial court that "priority of debt claims of

the Small Business Administration vis-a-vis the claims of \* \* \* state agencies is determined by federal law." United States v. Clover Spinning Mills Co., supra. And, under federal law, the applicable rule here is "first in time, first in right." And see United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520; United States v. State of Vermont, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370; United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed. 2d 770.[3]

In this respect the Director urges that the state was first in time with its lien because prior to any action by the Small Business Administration to foreclose its chattel mortgage, the state took possession of the contested property thereby perfecting its choate lien on the specific property; that since the amount due on the SBA mortgage was undetermined until after institution of this foreclosure proceedings, its lien was inchoate and did not choately attach to the specific property until after perfection of the state's lien.

 Unique as this argument may be, it must fail. As we have seen, federal liens take priority over all competing liens except those which are both earlier in time and choate. See United States v. City of New Britain, supra. And, the elements of a choate lien are no more than certainty of the identity of the lienor, the identity of the property bound by the lien and the amount of the lien. Id. 347 U.S. 84, 74 S.Ct. 367. Here the chattel mortgage and Deed of Trust set forth with specificity each of the necessary elements, hence the lien became choate at the time the documents were executed in May, 1964. On the other hand, the state taxes did not become due and owing until at least December, 1965. Until due, they were uncertain in amount, hence lacking in a necessary element of choateness. We

must thus conclude, as did the trial court, that the SBA lien was unquestionably first in time, and, therefore, first in right or priority.

The judgment is affirmed.

---

3. The United States argues that even if the "first in time rule" is inapplicable, the SBA retains priority under 31 U.S.C.

§ 191. But, like the trial court, we find it unnecessary to reach this argument.