**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**John TIPTON; Exec. Director of
Revenue; State of Colorado,
Defendants–Appellees.**

No. 89–1069.

United States Court of Appeals,
Tenth Circuit.

March 12, 1990.

John J. McCarthy, Atty., Tax Div., Dept. of Justice (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, David English Carmack, Attys., Tax Div., Dept. of Justice with him on the brief), Washington, D.C., for plaintiff-appellant.

Bradley J. Holmes, Asst. Atty. Gen., State of Colo. (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., State of Colo., with him on the brief), Denver, Colo., for defendants-appellees.

Before LOGAN and MOORE, Circuit Judges, and THOMPSON,* Chief Judge.

PER CURIAM.

Plaintiff, United States of America, on behalf of the Small Business Administration (SBA), appeals from a judgment entered by the district court in favor of defendants, the State of Colorado and its executive director of revenue, in this action brought by SBA for a declaratory judgment and injunctive relief to determine and enforce the priority of certain perfected security interests held by SBA as against later-arising sales, excise and withholding tax liens held by the State of Colorado and the County of Delta, Colorado. At the conclusion of proceedings on the parties' cross-motions for summary judgment, the district court held that, pursuant to *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), the priority dispute should be resolved under state law, which would place state and county tax liens in a position superior to that accorded the earlier filed SBA liens. *See* Colo.Rev. Stat. § 29–2–106(1), § 39–22–604(7)(a), and § 39–26–117(1)(a).

Further recitation of the factual and procedural background is not necessary to the resolution of the dispositive legal issues raised by this appeal. We must determine (1) whether the Supreme Court's holding in *Kimbell Foods,* that "absent a congressional directive, the relative priority of *private* liens and consensual liens arising from these Government [SBA and FmHA] lending programs is to be determined under nondiscriminatory state laws," *Kimbell Foods,* 440 U.S. at 740, 99 S.Ct. at 1465 (emphasis added), also applies to priority disputes between SBA liens and state and local *tax* liens, and, if so, (2) whether the express exceptions relating to contrary congressional directives and discriminatory state rules nevertheless require rejection of Colorado's tax lien laws in favor of a federal rule according priority to the SBA liens.

Initially, we note that there exists in this circuit a line of cases predating *Kimbell Foods* and holding that federal common law, specifically the first-in-time/choateness rule under which a federal lien takes priority over all state liens except those that are both earlier in time and choate, determines the relative priority of federal consensual liens with respect to the type of state tax liens involved in this case. *See United States v. City of Albuquerque,* 465 F.2d 776, 777–78 (10th Cir.1972); *Director of Revenue v. United States,* 392 F.2d 307, 311–13 (10th Cir.1968). However, as we recently recognized in a related setting in *FLB v. Ferguson,* 896 F.2d 1244 (10th Cir.1990), the Supreme Court's decision in *Kimbell Foods* effectively undermines such prior lines of authority that mechanically applied the first-in-time/choateness rule whenever a federal consensual lien was involved.

On the other hand, the Supreme Court did not decide in *Kimbell Foods* whether adoption of state law would be appropriate in all similar or related contexts, such as the present priority contest between consensual federal liens and state tax liens. *See Kimbell Foods,* 440 U.S. at 722 n. 9,

---

* The Honorable Ralph G. Thompson, Chief Judge, United States District Court for the West-ern District of Oklahoma, sitting by designation.

735 n. 34, 99 S.Ct. at 1455 n. 9, 1462 n. 34. However, much of its analysis, particularly concerning the unsubstantiated need for uniformity and for special protection of federal lending program objectives, is pertinent here. *See id.* at 729–38, 99 S.Ct. at 1459–64; *see, e.g., Pearlstein v. SBA,* 719 F.2d 1169, 1176–77 (D.C.Cir.1983); *United States v. Dansby,* 509 F.Supp. 188, 192–94 (N.D.Ohio 1981). Furthermore, while SBA argues that the noncommercial character of the state's competing liens removes from this case the third and final consideration favoring adoption of state law in *Kimbell Foods,* regarding the disruptive effect the external imposition of an independent federal priority rule would have on otherwise state law-based commercial relationships, *see id.,* 440 U.S. at 729, 739–40, 99 S.Ct. at 1459, 1464–65, this factor is replaced here by the certainly equally significant interest of the state and county in the effective and efficient collection of their tax revenue. *See Pearlstein,* 719 F.2d at 1177 (although application of the federal rule to priority dispute involving SBA lien and local (District) tax lien would not disrupt commercial relationships, it would disrupt special priority otherwise provided the District to aid collection of its taxes); *Dansby,* 509 F.Supp. at 195 n. 10 (while *Kimbell Foods* was concerned with disruptive effect of uniform federal rule on private commercial relationships, "[t]he reluctance to impose a uniform federal rule ... applies with equal force when the consequences would disrupt the State's tax collecting function"). *See generally Kimbell Foods,* 440 U.S. at 734, 99 S.Ct. at 1461–62 ("[T]hat collection of taxes is vital to the functioning, indeed existence, of government cannot be denied.").

For the above reasons, we adopt the *Kimbell Foods* decision as controlling in the present context despite the cited difference in the nature of the state liens competing with the liens of the SBA. *Accord Pearlstein,* 719 F.2d at 1176–77; *Dansby,* 509 F.Supp. at 192–95; *see also United*

*States v. Belanger,* 598 F.Supp. 598, 603–04, 606 (D.Me.1984) (municipal tax lien granted priority over SBA mortgage lien pursuant to state law adopted as federal rule of decision). Accordingly, we turn now to SBA's arguments relating to the two exceptions explicitly incorporated by the Supreme Court into its holding in *Kimbell Foods.*

SBA maintains that 15 U.S.C. § 646 provides a congressional directive, absent in *Kimbell Foods,* precluding the use of state law in the present context. Section 646, which expressly subordinates interests held by the SBA "to any lien on property for taxes due on the property to a state ... in any case where such lien would under applicable state law, be superior to [the SBA interest] if ... held by any party other than the United States," has long been limited specifically to *ad valorem* property taxes, thereby excluding the type of taxes involved herein from its ambit. *See City of Albuquerque,* 465 F.2d at 777–78; *Director of Revenue,* 392 F.2d at 311–12. Consequently, SBA contends that in passing § 646, Congress directed, by implication, that liens for all other state and local taxes be governed by the federal (first-in-time/choateness) rule.

The case law subsequent to *Kimbell Foods* has consistently indicated that the federal courts' authority to prescribe the content of a federal rule of decision by adoption of pertinent state law (or by formulation of a uniform federal principle) should be deemed precluded only by a clear and explicit contrary congressional directive. *See, e.g., Boyle v. United Technologies Corp.,* 487 U.S. 500, 504–05, 108 S.Ct. 2510, 2514, 101 L.Ed.2d 442 (1988); *Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1458 (9th Cir.1986); *Gamewell Mfg., Inc. v. HVAC Supply, Inc.,* 715 F.2d 112, 114 (4th Cir.1983). We do not consider the arguable inference drawn by SBA from § 646, passed by Congress and restrictively interpreted by the courts[1] long before

---

**1.** It is noteworthy in this regard that the Senate Report's statement of the purpose of § 646 speaks in quite general terms of the subordination of "SBA claims against [borrowers'] *assets*"

to "state and local *tax liens against such assets,*" with no indication that whole classes of state tax liens are intended to remain under the existing federal first-in-time/choateness regime. S.Rep.

*Kimbell Foods* had clarified this area of law, the kind of definitive declaration of congressional intent necessary to preclude the application of state law in this case.[2] *See also Chicago Title Ins. Co. v. Sherred Village Assocs.*, 708 F.2d 804, 808 and n. 2 (1st Cir.1983) (rejecting similar argument that omission of mechanics' liens from list of competing state liens expressly granted priority over HUD interests in 12 U.S.C. §§ 1715z–3(a)(2) and 1713(g), constituted a congressional directive that mechanics' liens be held inferior under federal law). Indeed, in *Kimbell Foods*, the Supreme Court referred in passing to the limited subordination provision of § 646 as one instance of a much broader congressional policy "indicating that the extraordinary safeguards [*e.g.*, the first-in-time/choateness rule] applied in the [federal] tax lien area are unnecessary to maintain the [SBA and FmHA] lending programs." *Kimbell Foods*, 440 U.S. at 735 and n. 36, 99 S.Ct. at 1462 and n. 36; *see Chicago Title*, 708 F.2d at 808 n. 2.

■ Finally, SBA argues that the Colorado tax lien priority statutes are discriminatory and therefore outside the domain of state law adoptable under *Kimbell Foods* in any event. Neither SBA nor the defen-

dants have cited us any authority specifically clarifying what the Supreme Court intended by its use of the phrase, "nondiscriminatory state laws," in *Kimbell Foods*. Our attention has, however, been directed to a roughly analogous question in the case law dealing with the intergovernmental tax immunity doctrine, pursuant to which "the States can never tax the United States directly but can tax any private parties with whom it does business, even though the financial burden falls on the United States, as long as the tax does not discriminate against the United States or those with whom it deals." *South Carolina v. Baker*, 485 U.S. 505, 523, 108 S.Ct. 1355, 1366, 99 L.Ed.2d 592 (1988). SBA contends that the discriminatory nature of Colorado's tax lien priority laws is supported by such decisions as *Davis v. Michigan Department of Treasury*, — U.S. ——, 109 S.Ct. 1500, 1507–08 and n. 4, 103 L.Ed.2d 891 (1989) and *Phillips Chemical Co. v. Dumas Independent School District*, 361 U.S. 376, 385–87, 80 S.Ct. 474, 480–81, 4 L.Ed.2d 384 (1960), which struck down as discriminatory certain state taxes that imposed a heavier burden on parties dealing with the United States than on those dealing with the taxing state despite the fact that the former

No. 1714, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Ad.News, 3071, 3080.

**2.** Even if such a negative implication could constitute a "congressional directive," SBA would not necessarily benefit from § 646. Strictly speaking, § 646 implies only that Congress, concerned primarily with property tax liens, left the priority of other state tax liens to principles developed in the pertinent federal case law, which at present consists of *Kimbell Foods* and its progeny. Nothing in the statute, the cited legislative history, or our prior cases indicates that Congress intended to (tacitly) codify and thereby freeze the developing general approach to federal lien priorities at its existing state in 1958. Indeed, in *Director of Revenue*, where this court first limited § 646 to *ad valorem* property tax liens, we did not hold the excluded tax liens governed by the first-in-time/choateness rule because of a negative implication from § 646. On the contrary, after flatly concluding that § 646 was "inapposite here," we looked to then-prevailing Supreme Court precedent directing use of the federal rule. *See Director of Revenue*, 392 F.2d at 312–13.

We are also not dissuaded by SBA's objection that our analysis of other state tax liens renders the specialized treatment of property tax liens

by § 646 superfluous. A similar charge could be leveled against *Kimbell Foods* itself, which overturned the federal priority rule in the commercial context not only despite, but actually in reliance upon, a legislative relaxation of the same rule *limited to* the federal tax area. *See Kimbell Foods*, 440 U.S. at 738, 99 S.Ct. at 1463–64. Stripped of rhetorical coloration, all this signifies is that federal case law has been brought in line with the policy reflected by existing statutory law in a related area. Furthermore, although it is true that *Kimbell Foods* leads to the same result here that § 646 would mandate in the state property tax context, that need not always be the case. Suppose state law were to provide property tax liens a priority over all competing interests except (for comity concerns) senior federal liens. If the situation were controlled by *Kimbell Foods*, which authorizes adoption of state law as written, senior SBA liens would take precedence over property tax liens, while under § 646, which only assigns SBA the same priority state law accords other lienholders, SBA would be placed in the same, subordinate position occupied by its nonfederal counterparts.

were treated no worse than other parties involved in purely private transactions. Thus, SBA argues, the Colorado laws in question here, which elevate the state liens to the disadvantage of the federal government, are discriminatory within the meaning of *Kimbell Foods* despite the fact that they admittedly grant the state the same advantage over all competing lienholders.

In neither *Davis* nor *Phillips* did the Supreme Court deem the state taxes discriminatory because they benefited the state at the expense of all taxpayers alike (including privies of the United States)—indeed, if that were the case, the wages of federal employees could not be taxed by the states even at uniformly prevailing rates, a matter that has been settled to the contrary for some fifty years, *see Graves v. New York*, 306 U.S. 466, 480, 485–87, 59 S.Ct. 595, 598, 600–02, 83 L.Ed. 927 (1939) (holding such income taxes nondiscriminatory and permissible). On the contrary, the Court invalidated the taxes precisely because in order to obtain this otherwise permissible benefit, the states had chosen to impose a burden that fell unequally upon taxpayers. In both cases, certain classes of taxpayers, from which privies of the United States were excluded, were granted an exemption due to their relationship with the taxing state. *See Davis*, 109 S.Ct. at 1502–03, 1507 (state income tax on retirement benefits of private and federal employees discriminatory because retired state employees' benefits exempt); *Phillips*, 361 U.S. at 380–82, 80 S.Ct. at 477–79 (state tax on private use of real property discriminatory because lessees of state, but not federal, property exempt). Indeed, the modern history of the intergovernmental tax immunity doctrine holds numerous illustrations of the proposition that impermissible discrimination exists only where revenue is raised by the state through *nonuniform* imposition of the corresponding tax burden (the fact that the state itself obviously benefits from the tax has nothing to do with the analysis). *See Baker*, 485 U.S. at 521–23, 108 S.Ct. at 1365–66 (discussing several prior decisions approving state taxes imposed uniformly on entire class of taxpayers, including privies of federal government).

Applying the standard for identifying discriminatory state laws developed in the intergovernmental tax immunity area to the present context, we conclude that the pertinent Colorado tax lien laws are nondiscriminatory. These laws expressly and categorically subordinate *all* other liens and claims (including other tax liens) to the particular tax liens specified therein. While, just as in *Graves* and the numerous decisions discussed in *Baker*, the state itself admittedly benefits from the tax lien laws considered here, the onus is borne equally by all affected interests, whether federal, state, or private in nature.

Accordingly, we hold that the district court correctly relied upon *Kimbell Foods* as controlling precedent, and pursuant to its guidance, properly looked to Colorado law to determine the lien priorities of the parties.[3]

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

---

**3.** This opinion has been reviewed by the entire court, which has authorized us to state that this circuit's prior decisions in *City of Albuquerque* and *Director of Revenue* are, insofar as they are contrary herewith, effectively overruled by *Kim-* bell Foods. *See generally United States v. Taylor*, 828 F.2d 630, 633 (10th Cir.1987) (en banc approval required for panel's divergence from circuit precedent).