708 F.2d 804
 CHICAGO TITLE INSURANCE COMPANY, et al., Plaintiffs, Appellants,
v.
SHERRED VILLAGE ASSOCIATES, et al., Defendants, Appellees.
CHICAGO TITLE INSURANCE COMPANY, et al., Plaintiffs, Appellees,
v.
SHERRED VILLAGE ASSOCIATES, et al., Defendants, Appellees.
Department of Housing and Urban Development, Defendant, Appellant.
 Nos. 82-1657, 82-1658.
 United States Court of Appeals,
First Circuit.
 Argued March 8, 1983.
Decided May 17, 1983.
 
 John W. Philbrick, Portland, Me., with whom Verrill & Dana, Portland, Me., Donald Memmer, and Gladys N. Bryer, Chicago, Ill., were on brief, for plaintiffs, appellants Chicago Title Ins. Co. and New England Merchant's Nat. Bank.
 Margaret E. Clark, Atty., Civil Div., Dept. of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Richard S. Cohen, U.S. Atty., Portland, Me., Anthony J. Steinmeyer, Atty., Civil Div., Dept. of Justice, and Nancy Christopher, Atty., Dept. of Housing and Urban Development, Washington, D.C., were on brief, for defendant, appellant Secretary of Housing and Urban Development.
 Karen B. Lovell, Saco, Me., with whom Charles W. Smith, and Smith & Elliott, P.A., Saco, Me., were on brief, for defendant, appellee Hercoform, Incorporated.
 Before COFFIN, Chief Judge, BREYER, Circuit Judge, and MALETZ,* Senior Judge.
 COFFIN, Circuit Judge.
 
 
 1
 The issue before us is whether federal law should adopt a state rule of decision governing the relative priority of a mechanics' lien and a mortgage insured by and assigned to the Department of Housing and Urban Development (HUD). We have been charged by the Supreme Court with the responsibility of determining whether the facts of this case are sufficiently different from those in United States v. Kimbell Foods, Inc., 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), to necessitate a federal rule of decision in priority disputes involving HUD mortgages. For the reasons set out below, we agree with the district court, see 544 F.Supp. 320 (D.Me.1982), that in this case, as in Kimbell Foods, Congress has not spoken regarding the priority rule that should govern and it does not appear that a national rule is necessary to protect the federal interests underlying the loan program.
 
 I. Factual and Procedural Background
 
 2
 This case involves security interests relating to a moderate income housing project built in Bath, Maine in 1972 and 1973. Sherred Village Associates (Sherred Village) is the owner and developer of the project. Hercoform Incorporated (Hercoform) was a subcontractor on the project. It performed work pursuant to a contract entered into in 1971 with Sherred Corporation, contractor for Sherred Village. Financing was provided by the New England Merchants National Bank (Bank), in exchange for a mortgage on the property insured by HUD under Section 236 of the National Housing Act, 12 U.S.C. Sec. 1715z-1. Chicago Title Insurance Company (Chicago Title) insured the developer's title in the mortgaged property for the benefit of the Bank. Among the risks insured against were liens superior to the Bank's mortgage.
 
 
 3
 Following completion of the project in 1973, Hercoform filed a mechanics' lien claim for $440,986.03 in assertedly unpaid bills on the project. Hercoform also commenced an action in state court to enforce its lien. In 1974, Sherred Village defaulted on its payment to the Bank and the Bank assigned the mortgage to HUD.
 
 
 4
 Before judgment was rendered in the state court action, the Bank and Chicago Title brought suit in the United States District Court for the District of Maine, seeking a declaration that the government's mortgage lien was entitled to priority over Hercoform's mechanics' lien. Hercoform and HUD were named as defendants, although HUD agreed with plaintiffs that the federal lien had priority.
 
 
 5
 It was undisputed that under Maine law Hercoform's lien was entitled to priority, since Hercoform's contract was executed prior to the recording of the mortgage. See 10 M.R.S.A. Sec. 3251. The court ruled, however, that the traditional federal "first in time, first in right" and "choateness" rules controlled and that, under those rules, HUD's mortgage was entitled to priority over the mechanics' lien asserted by Hercoform. We affirmed. See 568 F.2d 217 (1st Cir.1978).
 
 
 6
 In 1979, the Supreme Court, 441 U.S. 901, 99 S.Ct. 1987, 60 L.Ed.2d 370, vacated the judgment and remanded the case to us for further consideration in light of United States v. Kimbell Foods, Inc., supra. We in turn remanded it to the district court, where HUD joined with Chicago Title and the Bank in urging that a federal rule of priority should govern. The district court reopened the record and conducted an extensive evidentiary hearing concerning the operation of the HUD Section 236 program, pursuant to which this project was undertaken.[1] The court concluded that state lien priority law should be adopted as the federal rule of decision and, accordingly, that Hercoform's mechanics' lien is superior to the mortgage held by HUD. Plaintiffs appealed that decision to us. Having considered the arguments advanced by the parties before us, both written and oral, and having reviewed the record and the carefully considered opinion of the district court, we affirm.
 
 II. Analysis
 
 7
 Plaintiffs advance two primary arguments in support of their contention that federal law should control. First, they insist that although Congress has not explicitly mandated a federal rule of priority in disputes involving HUD mortgages, Congress's intent that there should be such a rule is clear. Second, they urge that even if we are not persuaded of the clarity of Congress's directive, application of the factors set out by the Supreme Court in Kimbell Foods supports their position that a uniform federal rule of priority is necessary.
 
 A. Congressional Intent
 
 8
 The analysis of the Supreme Court in Kimbell Foods was premised on the fact that Congress had not spoken regarding the priority of private liens and contractual liens arising from Small Business Administration (SBA) and Farmers Home Administration (FHA) loan programs. See 440 U.S. at 718, 735, 740, 99 S.Ct. at 1453, 1462, 1464-65. The trial court in this case also recognized that a clear indication of congressional intent would render Kimbell Foods inapplicable.
 
 
 9
 Appellants advance several arguments that Congress has spoken regarding the priority that should be accorded a HUD insured mortgage. First, they insist that both the statute and HUD's regulations require that HUD insure only mortgages that are "first liens" on the properties covered. See 12 U.S.C. Sec. 1707(a); 24 CFR Secs. 203.17(a), 207.3(a)(3). In addition, HUD has consistently construed the statute and regulations as requiring that the mortgages it insures take priority over after-recorded private liens and, appellants insist, that interpretation is entitled to "controlling weight" unless it is "plainly erroneous" or inconsistent with the wording of the regulations themselves. United States v. Larionoff, 431 U.S. 864, 872-73, 97 S.Ct. 2150, 2155-56, 53 L.Ed.2d 48 (1977).
 
 
 10
 Appellants do not argue that the statute and regulations requiring "first lien" status themselves preempt state priority rules. Such a position would be difficult to maintain, in light of the absence of any mention in either the statute or the regulations of a federal rule of priority[2] and of the provisions in the regulations requiring that a mortgagee warrant, at the time of assignment of the mortgage to HUD, that it is not encumbered by any mechanics' liens recorded after the mortgage, regardless of whether such liens attached prior to the recording date. See 24 CFR Secs. 236.251, 207.258. The requirement would not be necessary if the regulations also mandated a federal rule of priority. Appellants argue, instead, that, given HUD's interpretation of "first lien," a federal rule of priority is necessary to ensure the required absolute priority. They also point out that they have long assumed that the necessary federal rule of priority would govern.[3]
 
 
 11
 We agree that an agency's interpretation of its own regulations is entitled to considerable weight. We also agree that, assuming that the action would be within its delegated authority, the agency could promulgate regulations requiring the "first in time" priority rule. See Fidelity Federal Savings and Loan Association v. de la Cuesta, --- U.S. ----, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). We are not persuaded, however, that the sum of these two propositions means that an agency may, by its interpretation of its regulations, accomplish a preemption of state law not otherwise supportable in the regulations themselves. Absent a clearer declaration by Congress or HUD, we find the agency's assumption that a federal rule of priority was necessary to ensure its "first lien" statutes an insufficient indication of congressional intent to render Kimbell Foods inapplicable.
 
 
 12
 Appellants also point to Congress's 1981 enactment of the Multifamily Mortgage Foreclosure Act (MMFA), 12 U.S.C. Sec. 3701 et seq., as evidence of Congress's intent that a federal rule of priority should govern in this case. That act provides for a nonjudicial foreclosure in the event of a default by the mortgagor on a mortgage held by HUD under Title II of the National Housing Act or section 1452b of Title 42. Section 3712 of the MMFA sets out the order in which payment of proceeds from a foreclosure sale should be made. The order conforms to the "first in time" rule urged by appellants.
 
 
 13
 The MMFA would, it appears, cover a HUD-initiated foreclosure on the mortgage at issue here. Thus, appellants insist, it is irrational to assume that Congress would set out a rule for distribution of proceeds of a foreclosure sale forced by HUD and not intend that the same rule apply to a distribution of proceeds of a foreclosure sale forced by a contractor enforcing a mechanics' lien.
 
 
 14
 Appellants' argument has some appeal. Under Maine law, the remedy available to the holder of a mechanics' lien is to file a complaint asserting its lien and asking that the property be sold and the proceeds applied to the discharge of the lien. See 10 M.R.S.A. Sec. 3257. Thus, it would appear that the result of agreeing with the district court that Congress did not intend to mandate a federal rule of priority for all situations in which a HUD mortgage is involved would be that the difference between having the state or federal rule apply would depend on who enforced his lien first.
 
 
 15
 For whatever reason, however, Congress has not explicitly mandated a federal rule of priority in cases in which a contractor seeks to enforce a mechanics' lien. Nor did it, in enacting the MMFA, express its intent that federally insured liens always have first in time priority or any concern over the possible subordination of a federal lien to a superior mechanics' lien. The legislative history of the act indicates only that Congress was concerned that when HUD does foreclose, it have an expeditious foreclosure process:
 
 
 16
 "This measure is of special importance to HUD's multifamily mortgage insurance and rehabilitation loan programs. Lengthy delays in foreclosing defaulted mortgages caused by excessive foreclosure periods in some States increase the risk of property deterioration, vandalism and waste. The resulting loss to HUD (including its mortgage insurance funds) and the taxpayer in terms of rehabilitation costs and increased management and holding expenses is substantial. Moreover, these conditions impose a severe hardship on the tenants of affected projects and on the neighborhoods in which the projects are located. The proposed legislation would ameliorate this situation by providing an efficient, equitable, and, most important, relatively expeditious nonjudicial foreclosure remedy." 1981 U.S.Code Cong. & Ad.News 560.
 
 
 17
 Further support for a narrow construction of the MMFA is provided by Congress's explicit direction that "[t]he title is procedural only and is not intended to affect substantive rights except as explicitly set out in the bill." Id.
 
 
 18
 It may be that Congress's silence on the need for a federal rule of priority reflects only that it shared HUD's assumption that there already was such a rule. According to appellants, no federal court has declined to apply the "first in time" test in a dispute involving HUD. The same argument, however, could have been made regarding Congress's silence on the priority of SBA and FHA loans, and the Court in Kimbell Foods read no more into that silence than that Congress had expressed no intent that federal law govern. In the absence of more specific congressional direction, we are reluctant to read into the existence of the MMFA Congress's intent that a federal rule of priority govern in all situations in which property financed by a HUD insured mortgage may be foreclosed.
 
 
 19
 We are also not persuaded that the apparent anomaly is real enough to render our conclusion irrational. In the first place, the MMFA applies by its terms only when foreclosure is sought by HUD. Under the regulations, 24 CFR Sec. 207.258, a mortgagee can elect, after default by the mortgagor, whether to foreclose itself and convey the property to HUD (or, with permission from HUD, sell the property) or to assign the mortgage to HUD and let HUD foreclose. Thus, even in the event of a default warranting foreclosure by the mortgagee, the MMFA does not necessarily control. In addition, even if HUD holds the mortgage, if a contractor seeks to enforce a mechanics' lien, in most cases the mortgagee will decide that it is better off advancing the money to pay off the mechanics' lien so that the project can continue than allowing the property to be sold, even if the mortgagee is entitled to the bulk of the proceeds. If not, because the existence of a mechanics' lien is a covenant default, HUD itself could foreclose and be entitled to first in time priority under the MMFA.[4]
 
 
 20
 The result of allowing state law to govern in this case, then, would not be to establish two different sets of priorities for disposition of sale proceeds, but only to allow a contractor to force HUD, or someone to whom HUD has passed the risk, to make sure that the contractor gets paid for all work done with the consent of the owner. A contrary rule, such as the federal "first in time" rule set out in the MMFA, would mean that a contractor would have no way of forcing recovery for work performed with the consent of the owner, or even with the consent of HUD, unless he could file his lien prior to the recording of the mortgage. If he sued to enforce his lien, HUD would step in and assert its prior interest in the property. The contractor could then not reach the property until the beneficial interest in it was returned to the original owner.
 
 
 21
 In sum, we are not persuaded that Congress has spoken on the need for a federal rule of priority in all disputes involving HUD mortgages. We proceed, therefore, to an analysis of the factors set out by the Supreme Court in Kimbell Foods to guide our determination whether a federal rule of decision is necessary.
 
 B. Kimbell Foods Test
 
 22
 In Kimbell Foods, the Supreme Court set out three factors that should be considered in determining whether federal law should adopt a state rule of decision to govern federal programs. Those factors are: the need for a nationally uniform body of law, the likelihood that application of state law would frustrate specific objectives of the federal program, and the extent to which application of a federal rule would disrupt commercial relationships predicated on state law. The trial court analyzed the evidence in this case in light of those factors and determined that a state rule of decision should be adopted.
 
 1. Standard of Review
 
 23
 Before delving into the merits of the Kimbell Foods analysis, we acknowledge the deference we owe to the trial court's findings. The trial court's determination that, under the Kimbell Foods analysis, a state rule of decision should be adopted might be labelled an "ultimate fact" independently reviewable by a court of appeals. See Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944). We are guided, however, by the Supreme Court's insistence in Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), that a court of appeals not, by labelling a finding an "ultimate fact" seek to substitute its own assessment of the evidence for that of the trial court. The analysis suggested by the Court in Kimbell Foods requires a number of factual determinations and judgment calls in light of the evidence as a whole. The court below had the benefit of several days of hearings and first hand knowledge of the viewpoints of the various witnesses. We consider ourselves bound by that court's determinations unless "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." United States v. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), quoted in Pullman-Standard v. Swint, supra, 102 S.Ct. at 1788 n. 14.
 
 2. Need for Uniformity
 
 24
 The district court considered HUD requirements and practices regarding the operation of the Section 236 program and concluded that "in this case, as in Kimbell Foods, 'considerations of administrative convenience do not warrant adoption of a uniform federal law.' " 544 F.Supp. at 327. Appellants strenuously contend that the court failed to address critical distinctions between the HUD program at issue here and the SBA and FHA programs considered by the Court in Kimbell Foods. In particular, they point out that, in contrast to the relatively uniform state rules governing the priority of liens in personal property, state mechanics' lien laws differ from state to state. They also point out that the HUD program is built around an assumption that the HUD mortgage will be a uniform instrument, not subject to the vagaries of state law, and not set up to accommodate state substantive law. The SBA and FHA regulations, in contrast, expressly acknowledged substantive state priority laws that might subject the federal liens to superior private liens.
 
 
 25
 We agree with appellants that the HUD program differs from the SBA and FHA programs at issue in Kimbell Foods, in particular in the national base from which HUD seeks to attract funding. We do not, however, consider this distinction or the other distinctions pointed out by appellants to be significant enough to render the district court's judgment clearly erroneous. As the district court noted, there are striking similarities between the programs in the key factors discussed by the Court in Kimbell Foods. HUD administers the program through field offices staffed with local counsel from each state. HUD regulations require compliance with state procedural requirements and look to state substantive law on a number of points. Finally, assessing insurance applications in light of state priority law would not greatly increase the burden on HUD, since each application already receives extensive individual scrutiny.
 
 3. Frustration of Federal Objectives
 
 26
 Appellants' major argument regarding application of the Kimbell Foods test is aimed at what they consider to be the court's failure to appreciate the severe consequences to the HUD program and to the intended beneficiaries of that program of adoption of a state rule of decision. They envision a domino-like progression of calamities. Title insurance companies will be unwilling to write lien coverage for HUD projects in states like Maine; initiating lenders and subsequent purchasers of the mortgages will be unwilling to assume the risk of having their mortgages "primed" by (i.e., subordinated to) subsequently recorded mechanics' liens; HUD projects will come to a halt in those states and there will be no more federally insured low and moderate income housing there.
 
 
 27
 The district court considered all of the evidence and was not persuaded that the HUD program would collapse if the linchpin of absolute federal priority were removed. It noted the number of provisions made by HUD to ensure the financial soundness of the projects insured by HUD. It also noted that by requiring that the initiating lender warrant, at the time of assignment of a mortgage to HUD, that the mortgage is prior to all other liens, HUD had effectively shifted the risk of those liens to the initiating lenders. As to the argument that were HUD to abandon its current policy of not enforcing the warranty requirement, initiating lenders would not be willing to participate in the programs, the court concluded that the evidence simply did not support the contention. Initiating lenders who testified did not indicate that they would be unwilling to participate if they ran the risk of responsibility for mechanics' liens. In addition, the court noted that initiating lenders protect themselves with title insurance and concluded that mechanics' lien coverage is (and, presumably, will remain) available. While the evidence on these points was not undisputed, there is sufficient evidence in the record to support the court's determinations.
 
 
 28
 On appeal, HUD urges that even if there is support for the court's conclusions regarding the primary actors in the HUD financing scheme, the court erred in failing to consider the impact of abandoning a rule of "first in time" priority on the secondary mortgage market and on the Government National Mortgage Association's (GNMA) mortgage-backed securities program. Because of the importance of those secondary market programs in providing funding for HUD's low and moderate income housing programs, we have looked closely at the evidence that those funding sources would not be available absent a "first in time" rule of priority. We are not persuaded that the court's findings on the effect of a state rule of priority on the mortgage purchase and sale program are clearly wrong or that the court's failure to address the effect of a state rule on the mortgage backed securities program renders its conclusions "clearly erroneous."
 
 
 29
 a. Mortgage purchase and sales programs--the "tandem programs"
 
 
 30
 Under the tandem programs, GNMA purchases mortgages from initiating lenders and then resells them at auction at a reduced price. The loss is considered a government subsidy to the housing program. The purpose of this resale scheme as we understand it is to funnel outside funds into the housing program--to free up the initiating lenders to make more mortgages--and to encourage the initiating lenders to make construction loans at rates lower than they would be willing to charge for long term mortgages.
 
 
 31
 HUD argues that the district court, in analyzing the harm to HUD of a state rule of priority, focused too narrowly on HUD's ability to require that initiating lenders, GNMA or purchasers from GNMA warrant that the mortgage is prior to all subsequently recorded liens. It points out that while that arrangement may protect HUD, it would, if enforced, discourage investors from participating in the program. In particular, the purchasers from GNMA would be unwilling to do so if the risk of a mechanics' lien were on them.
 
 
 32
 The district court, however, did not ignore this problem. It noted that a purchaser from GNMA is protected against mechanics' liens by the contractual agreement of GNMA either to repurchase the mortgage or to correct any defect preventing recovery from HUD. GNMA could then require repurchase by the initiating lender who was required to warrant, on selling the mortgage to GNMA, that it was clear of all liens. The risk, in other words, has again been shifted to the initiating lender and the only remaining issue is whether initiating lenders will continue to be willing to participate if they believe that the warranties they have always had to agree to may now be enforced. The district court concluded that they would be and we find its conclusion supportable.
 
 
 33
 b. Mortgage-backed securities program
 
 
 34
 According to testimony before the district court, 80% of the funding for HUD's low and moderate income housing programs is provided by GNMA's mortgage backed securities program. Under this program, GNMA allows private financial institutions to originate and create pools of mortgages which are used as collateral for securities issued and guaranteed by GNMA. The issuer, the private financial institution, guarantees to the ultimate purchaser of the security that the investor will receive the timely payment of principal and interest whether actually collected or not. GNMA in turn guarantees the performance of the private financial institution.
 
 
 35
 The mortgage-backed securities are, apparently, attractive as stable, long term investments to groups such as pension funds and state and local retirement funds. According to appellants, if mortgages used as collateral for securities guaranteed by GNMA were allowed to be subjected to a mechanics' lien, GNMA might declare the mortgages unstable and require the initiating lender to repurchase the security from the security dealer who would, in turn, repurchase the security from the holder. Thus, the desirability of the mortgage backed securities as long term investments would be undermined.
 
 
 36
 The problem with appellants' argument, as we understand the program, is that GNMA is not compelled by statute or regulation to declare the mortgages unstable and to require repurchase of the loans whenever a mechanics' lien on the mortgaged property is filed. HUD's regulations require only that at the time of assignment of the mortgage to it, there be no superior mechanics' lien on the property. Thus, any instability is simply a result of anticipation of what might happen--the mortgagor might default and HUD might refuse the mortgage entirely and GNMA might have to repurchase the security itself and might not be able to recover from the initiating lender for breach of its warranty that the mortgage would not be encumbered by a mechanics' lien. Obviously GNMA must worry about these possibilities. Our point is simply that, based on the sparse and speculative testimony on this issue before the district court, we are simply not convinced that without a federal rule of priority, and assuming that projects are otherwise stable, GNMA will not find other ways of satisfying themselves that the risk is small enough to proceed with most of the mortgage portfolios despite the presence of a mechanics' lien on one of the mortgages. If there is more of a problem than the district court understood from the evidence before it, or than we understand from our examination of the record, the proper remedy would seem to be for Congress, or at least for HUD, to mandate specifically a federal rule of priority for HUD insured mortgages and to explain why it is necessary.
 
 
 37
 4. Disruption of Commercial Relationships Predicated on State Law
 
 
 38
 Citing Maine's "comprehensive statutory scheme ... 'designed to protect the rights of the owner as well as to afford security for those performing labor or furnishing labor or materials,' " the district court concluded that the protection of contractors who rely on state mechanics' lien law to safeguard their interests requires application of that law as the federal rule of decision. Appellants' primary contention before us is that in this case, everyone knew that a HUD mortgage was involved. Thus, Hercoform should have been aware that it would not be able to recover on a mechanics' lien. More important, Hercoform was aware of other protection provided it by the HUD program--a detailed picture of the financial condition of the project before it performed any work and the knowledge that the money is available from HUD to complete the project. Thus, the protection of the state mechanics' lien law was unnecessary.
 
 
 39
 We are not persuaded. In the first place, according to Hercoform, its detailed prospective look at the financial condition of the project has done nothing to ensure that it would in fact be paid for its work. We also agree with the trial court that whether or not this particular subcontractor expected to be able to avail itself of the state mechanics' lien law is not the crucial issue. The more important question is what would be the long term consequences of adopting a federal rule of priority in disputes involving HUD mortgages. We agree with the district court and with the Court of Appeals for the Ninth Circuit, see Pankow Construction Co. v. Advance Mortgage Corp., 618 F.2d 611, 615-16 (9th Cir.1980), that the formulation of rules to ensure predictability and stability in relationships among the parties to construction projects is primarily a matter of local concern. Absent compelling reasons to displace state law, the relationships are best governed by those local rules.
 
 III. Prospective or Retrospective Application
 
 40
 Appellants urge that even if we find that a state rule of priority should govern disputes involving HUD mortgages, except where Congress has specifically provided for a federal rule of decision, we should not apply the rule to the parties before us, because appellants relied on the "first in time" doctrine. Hercoform counters by pointing out that in 1972 and 1973, the state of the law regarding application of the "first in time" rule to a dispute between a federal mortgagee and a private lienor was unsettled. Reliance on it would therefore have been unjustified. In addition, HUD's own regulations insulating itself from loss resulting from subsequently filed liens contradict appellants' argument that the availability of the protection of the "first in time" rule was certain. We do not think that this is a case in which prospective application of our decision is necessary to prevent inequitable results or substantial hardship to the parties. See Chevron Oil Co. v. Huson, 404 U.S. 97, 106-08, 92 S.Ct. 349, 355-56, 30 L.Ed.2d 296 (1971).
 
 Conclusion
 
 41
 We affirm the judgment of the district court that the relative priority of Hercoform's mechanics' lien and the mortgage assigned to HUD should be determined under Maine law. As the issue is undisputed, we also agree that, under Maine law, Hercoform's mechanics' lien is prior to the mortgage assigned to HUD.
 
 
 42
 Affirmed.
 
 
 
 *
 Of the United States Court of International Trade, sitting by designation
 
 
 [1]
 The opinion of the district court outlines the operation of the Section 236 program. See 544 F.Supp. at 323-25
 
 
 [2]
 Whatever the significance, in the statutory definition of mortgages that HUD may insure, of the provision that those mortgages should be "first liens as are commonly given to secure advances on, or the unpaid purchase price of, real estate, under the laws of the State, in which the real estate is located ...", see 12 U.S.C. Sec. 1707(a), it hardly signals a clear congressional intent that federal priority law should govern
 We also reject appellants' argument that the absence of any mention of mechanics' liens in Congress's list of competing liens that should come ahead of the mortgage on default and assignment to HUD, see 12 U.S.C. Secs. 1715z-3(a)(2), 1713(g), signals Congress's intent that mechanics' liens should be inferior to the mortgage. As the district court noted, the Supreme Court regarded a similar provision in the SBA lending program, 15 U.S.C. Sec. 646, as support for its conclusion that absolute federal priority is not necessary to maintain the federal program. See 440 U.S. at 735 & n. 36, 99 S.Ct. at 1462 n. 36.
 
 
 [3]
 As evidence of that assumption, HUD points out that it has not enforced its contractual right to reject the assignment of mortgages that are encumbered by a mechanics' lien
 
 
 [4]
 In thus concluding, we do not intend to tackle the priority question that would be presented were a contractor to begin a proceeding to enforce his lien and HUD then to initiate foreclosure proceedings under the MMFA