STATE OF MONTANA, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–108C.

United States Court of Federal Claims.

Jan. 5, 1995.[1]

maining value due to the availability of directional drilling to exploit deep minerals.

1. This order originally was not issued for publication and is so reissued now, with minor editorial changes not affecting the substance of the opinion.

Sidney R. Thomas, Moulton, Bellingham, Longo & Mather, P.C., Billings, MT, for plaintiff.

Ross Daryl Cooper, U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, for defendant.

### ORDER

WEINSTEIN, Judge.

Defendant has moved to dismiss this action, which was transferred to this court by the United States District Court for the District of Montana, for lack of jurisdiction over plaintiff's claims for (1) damages for breach of a contract of which it claims to be a third-party beneficiary, (2) imposition of a constructive trust to prevent unjust enrichment, and (3) declaratory judgment. *See Montana v. United States*, No. 91–95–BLG–RWA, 1995 WL 376538 (D.Mont. Oct. 7, 1993). Plaintiff opposes this motion and, in the alternative, requests transfer back to the district court, which defendant opposes. The motion to dismiss is granted in part and

denied in part, and the motion to transfer is denied.

The Great Western Sugar Company ("Great Western" or "Company") operated a sugar beet factory in Billings, Montana, and factories in other states. The Company was subject to the Montana Workers' Compensation Act, and it chose to self-insure its workers' compensation risk.

Plaintiff, the State of Montana ("State"), asserts that, under its workers' compensation statute,[2] the State had a first lien against Great Western's security deposit, made pursuant to Mont.Code Ann. § 39–71–2106 (1994), and that, since this deposit apparently was not sufficient to meet the Company's obligations, the deficiency became a lien upon the Company's property within the state, *e.g.*, the sugar. The State therefore argues that the lien attaches to the proceeds of the sale of such property, which were paid to another lienor (secured creditor), defendant Commodity Credit Corporation ("CCC"), by order of the bankruptcy court, and that it is therefore a creditor with a "superior or equal" claim to the CCC's liens under the settlement agreement between the CCC and the banks who had prior recorded liens against the property.

### Background

Between November 1984 and February 1985, Great Western received price support loans from the CCC, an agency and instrumentality of the United States within the Department of Agriculture. The CCC retained a security interest in the Company's sugar. Stip.Ex. C.[3]

On March 7, 1985, Great Western filed a petition under Chapter 11 of the Bankruptcy Code in the United States District Court for the Northern District of Texas. On March

---

**2.** The statute provides,

> In the case of bankruptcy, insolvency, liquidation, or the failure of an employer or insurer to meet any obligations imposed by this chapter, every liability which may be due under this chapter shall constitute a first lien upon any deposit made by such employer or insurer, and if such deposit shall not be sufficient to secure the payment of such liability in the manner and at the times provided for in this chapter, *the deficiency shall be a lien upon all the property of such employer or insurer within this*

> *state* and shall be prorated with other lienable claims *and shall have preference over the claim of any creditor or creditors of such employer or insurer except the claims of other lienors.*
>
> Mont.Code Ann. § 39–71–408 (1993) (emphasis added).

**3.** "App." refers to the appendix to the motion to dismiss. "Supp.App." refers to the appendix to the reply to the opposition to the motion to dismiss. "Stip." refers to the stipulated facts submitted to the district court.

29, 1985, the bankruptcy court authorized the sale of a portion of the Company's assets, including sugar produced in its Montana operations, "free and clear of any mortgage, pledge, claim, lien, charge, encumbrance, security interest or other rights of any kind to any entity." App. 26. The proceeds of the sugar sale ("Sugar Proceeds") became part of the bankruptcy estate. A group of secured bank lenders (Bank Lenders) asserted first liens on the proceeds, as did the State, the CCC, and other creditors. App. 9; Supp. App. 1.

On December 23, 1985, the bankruptcy court approved an agreement by Great Western settling the claims of only the CCC and the Bank Lenders. The Bank Lenders received the non-sugar proceeds and agreed to recognize the superiority of the CCC lien as to the Sugar Proceeds, thus allowing Great Western to pay the CCC's claim with the Sugar Proceeds, while the CCC agreed to release any and all of its claims against the Company and the Bank Lenders, and to indemnify and hold harmless the latter for any claims "superior or equal" to the CCC's liens against the Sugar Proceeds that might be asserted against the Bank Lenders by third parties. App. 13.

The settlement agreement provided,

The CCC acknowledges (i) that upon implementation of this Compromise Settlement Agreement, the CCC *may be* subject to the claims of third parties and (ii) that other parties have asserted claims on [the Sugar Proceeds], which claims *may be* found to be *superior or equal* to the CCC Liens and accordingly, the CCC agrees that *it is subject to* claims and obligations with respect to [the Sugar Proceeds] *comparable to those imposed* on the Bank Lenders [with respect to the non-sugar proceeds] pursuant to Clause (c) of the final decretal paragraph of the [March 29 order, imposing an obligation to pay interest], whether such claims are asserted by such other parties or by the Bank Lenders by way of indemnity or contribution.

App. 13 (emphasis added).

Clause (c) of the final decretal paragraph of the March 29 order provided that "all repayments of the proceeds of sale [of non-

sugar proceeds] by the Bank Lenders, if any, that are ordered by a court of competent jurisdiction to be made pursuant to an Objection shall bear interest, from the date of receipt of such funds until the date of actual repayment...." App. 27–28.

Should any third-party claims be allowed, the CCC was given the right to amend its proof of claim to make up for the payment of any such claim. App. 14.

The court order approving the agreement provided,

[U]pon the payments by Great Western to the CCC under the Compromise Settlement Agreement, the CCC shall have obligations with respect to the [Sugar Proceeds] identical to those from which the Bank Lenders are hereby released, and any entity *having asserted a timely and proper Objection* based on a competing legal or equitable claim to all or any part of [the Sugar Proceeds] *shall assert its claim against the CCC,* and not against the Bank Lenders....

App. 7 (emphasis added).

Although the State filed a proof of claim arising from Great Western's workers' compensation liability, it apparently did not contest the bankruptcy court's approval of the 1985 settlement. Rather, in 1987, the State settled its claims against Great Western and the Bank Lenders for $100,000, but expressly did not waive "the right ... to pursue claims against the [CCC]." Stip.Ex. Q at 6. In 1991, the State filed suit in federal district court against the United States and the CCC, alleging that they had tortiously converted the Montana sugar sale proceeds without satisfying the State's lien on those assets. In 1992, the State settled, for approximately $667,759.53, claims filed in state court for workers' compensation benefits not paid due to Great Western's bankruptcy. (It is not clear when the State's claims for such funds became secured claims against the Sugar Proceeds, *i.e.,* whether, pursuant to the Montana workers' compensation statute, they were secured before the bankruptcy sale, and, if so, why the claims apparently were not taken into account to give the State

a portion of the settlement regarding the Sugar Proceeds.)

In 1993, the federal district court granted the government's motion to dismiss the State's action on the grounds that jurisdiction lay in this court. The transfer order stated,

> The State contends that it is one of the creditors for whose benefit the CCC received the settlement monies. If true, the CCC is indeed indebted to the State. However, its refusal to pay the debt does not give rise to the tort of conversion....
>
> ....
>
> In the final analysis, the State has sued the United States for debt arising from the CCC's participation in its court-approved settlement with Great Western and the bank lenders, receipt of settlement monies, and its subsequent failure to pay the State *as a third-party claimant whose rights were preserved by the CCC settlement agreement.* This is, simply put, a debt action.

App. 37–38 (emphasis added). The court concluded that, because the State sought more than $10,000, 28 U.S.C. § 1491 gave exclusive jurisdiction to this court, App. 42, and transferred the action pursuant to 28 U.S.C. § 1631. App. 46–47.

In July 1994, the State filed a third amended complaint in this court, seeking (1) monetary damages of approximately $667,759.53, plus interest, for breach of the settlement agreement (count one), (2) imposition of a constructive trust over funds paid to the CCC, to prevent an unjust enrichment (count two), and (3) a declaration that the State's lien is superior to that of the CCC (count three).

Defendant has moved to dismiss count one for lack of jurisdiction on the grounds that the settlement agreement is not a third-party beneficiary contract, and, even if so, it does not bind the government because the CCC lacked the authority to enter into such an agreement (or to consent to suit in this court), *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). Defendant also moves to dismiss counts two and three for lack of jurisdiction

because this court has no power to order specific enforcement of that agreement (as opposed to damages for its breach), or to grant any equitable or declaratory relief.

### *Discussion*

■ A court is required to ascertain its own jurisdiction, *sua sponte,* whenever it appears that it may be lacking. *See Hambsch v. United States,* 857 F.2d 763, 764 (Fed.Cir. 1988).

■ The law of the case doctrine does not mandate that a transferee court adhere to the transferring court's ruling regarding the transferee court's jurisdiction. "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). "The doctrine of law of the case comes into play only with respect to issues previously decided," *Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979), either expressly or "by necessary implication," *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1278 (Fed.Cir.1988), "'but not to questions which might have been decided but were not,'" *Smith Int'l, Inc. v. Hughes Tool Co.,* 759 F.2d 1572, 1577 (Fed.Cir.1985) (quoting *Morrow v. Dillard,* 580 F.2d 1284, 1290 (5th Cir.1978)), *cert. denied,* 474 U.S. 827, 106 S.Ct. 87, 88 L.Ed.2d 71 (1985).

■ A court's pretrial decision that jurisdiction over a plaintiff's claim lies in another court is not *res judicata* on whether the elements of the claim in the court have been properly pleaded, or the evidence is sufficient to establish plaintiff's entitlement to recover on such claim in the transferee court, because deciding such issues is not necessary for the transferor court to reach the conclusion that it had no jurisdiction. Thus, these facts and issues were not decided "by necessary implication." *W.L. Gore & Assocs., Inc.,* 842 F.2d at 1278.

■ Defendant first argues that the State is not a third-party beneficiary of the settlement agreement. A nonparty claiming "the exceptional privilege" of suing for breach of such an agreement, if he cannot

demonstrate privity with the parties, "must[ ] at least show that [the agreement] was intended for his direct benefit." *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195 (1912) (rejecting argument that citizen taxpayer whose property was damaged by fire as a result of a malfunctioning water hydrant is a third-party beneficiary to municipality's agreement with a water company, based upon lack of evidence of intention of parties to pay damages under particular circumstances); *see also Robo Wash, Inc.*, 223 Ct. Cl. 693, 697, 1980 WL 13154 (1980).

■ The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefited thereby. *See Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed.Cir. 1994) (suggesting that tenants were third-party beneficiaries of a contract between HUD and a developer); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1576 (Fed. Cir.1984) (farmers were third-party beneficiaries of a consent decree between the Bureau of Reclamation and an irrigation district); *Bogart v. United States*, 531 F.2d 988, 991, 209 Ct.Cl. 208 (1976) (plaintiff purchasers of real property at voided tax sale found not third-party beneficiaries of deed of trust agreement between original owners and title insurance company that required title company to reconvey the property upon payment of the note, when plaintiffs were not parties to the deed and were estopped by a previous court's decision that they had no title and that title belonged to the previous owners).

■ It is necessary that the beneficiary be identified *before* he has an enforceable right, *i.e.*, "at the time performance is due." 4 Arthur L. Corbin, *Corbin on Contracts* § 781, at 70 (1951). Also, the lack of identity of the beneficiary at the time the agreement is executed may have a bearing on whether the person was intended by the parties to be a third party beneficiary. *See Restatement (Second) of Contracts* § 308 cmt. a (1979) ("*Restatement*").

■ A settlement agreement in which the promisor undertakes to satisfy the lien of a third party against property of the promisee is not a third-party beneficiary contract unless the third party "would be reasonable in relying on the promise as manifesting an intention to confer a right on him" to seek relief from the promisor. *Restatement* § 302 cmts. b, d; *see, e.g., United States v. Wood,* 877 F.2d 453, 457–58 (6th Cir.1989); *see also Karpe v. United States,* 335 F.2d 454, 462–63, 167 Ct.Cl. 280 (1964) (government was a third-party beneficiary of settlement agreement between taxpayer and his former wife providing that taxpayer would pay any tax deficiency assessed against her for the years they were married), *cert. denied,* 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965); *cf. National Rural Utils. Coop. Fin. Corp. v. United States,* 867 F.2d 1393, 1399 (Fed.Cir. 1989) (lender was third-party beneficiary of agreement between Rural Electrification Administration (REA) and power company whereby REA would modify its lien on the company's assets to allow lender to make a secured loan to the company, provided the company accepted various covenants).

One question here, then, is whether it was reasonable for the State to rely on the settlement as manifesting the parties' intention to confer a right on the State. *Restatement* § 302 cmts. b, d. If it did not appear at the time of the signing of the settlement agreement that the State had a lien equal or superior to that of the CCC against the Sugar Proceeds at the time the sugar was sold pursuant to the order of the bankruptcy court, then the State would not appear to come within the category of persons entitled to any benefits of the settlement agreement.

The district court recognized but did not expressly decide (although it was briefed) the issue of whether the State's lien was equal or superior to the CCC's, and was recognized as such at the time when the State's proof of claim was filed or at the time of the settlement agreement. The Montana statute relied upon by the State provides that the security interest arises upon the employer's bankruptcy, insolvency, or failure to meet its workers' compensation obligations. Mont. Stat.Ann. § 39–71–408 (1993). The CCC's interests at issue here, however, apparently were recorded before the Company's insolvency, bankruptcy, or failure to pay, and thus

before the State's lien attached. Thus, if the time of recordation determines priority, the CCC's prior recordation of its interests appears to give it priority over the State's subsequent liens under the statute.

■ Defendant's second argument, that the State seeks specific performance of the settlement agreement rather than damages for its breach, because the portion of the agreement acknowledging defendant's potential liability to third parties merely made defendant subject to third-party claims, but did not require it to pay such claims, misses the mark. As the district court concluded, the State was seeking a payment of monetary *debt* based on the settlement agreement, which is generally considered a suit for damages for breach of the promise to pay, rather than for specific enforcement, *Restatement* § 307; *see, e.g., United States v. Wood,* 658 F.Supp. 1561, 1572 (W.D.Ky.1987), *aff'd in pertinent part,* 877 F.2d 453, 455 (6th Cir.1989). This court treats claims for payment of specific amounts (except in circumstances not relevant to this case) as breach of contract claims to damages. *See, e.g., Mitchell v. United States,* 930 F.2d 893, 895–96 (Fed.Cir.1991). The court therefore concludes that the State is seeking damages for breach of the third-party beneficiary agreement allegedly incorporated into the settlement agreement, not specific enforcement of that agreement.

■ Regarding counts two and three, defendant correctly argues that this court lacks jurisdiction to impose a constructive trust, *Last Chance Mining Co. v. United States,* 12 Cl.Ct. 551, 555 (1987), *aff'd without op.,* 846 F.2d 77 (Fed.Cir.), *cert. denied,* 488 U.S. 823, 109 S.Ct. 70, 102 L.Ed.2d 47 (1988), to issue a declaratory judgment, *United States v. King,* 395 U.S. 1, 3–4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969), or to order any other equitable remedy not permitted by statute, *Bowen v. Massachusetts,* 487 U.S. 879, 905, 108 S.Ct. 2722, 2737, 101 L.Ed.2d 749 (1988).

■ Plaintiff has moved to transfer this case back to the United States District Court for the District of Montana pursuant to 28 U.S.C. § 1631, on the grounds that the district court has exclusive jurisdiction over equitable and other claims arising under the Bankruptcy Code, *see* 28 U.S.C. § 1334. The court need not reach this jurisdictional issue, however, for section 1631 authorizes a transfer only when the transferring court "finds that there is a want of jurisdiction," 28 U.S.C. § 1631. Because the court has contract jurisdiction, over count one, transfer would not be proper. *See generally Johnson City Med. Ctr. Hosp. v. United States,* 20 Cl.Ct. 515, 516 (1990).

For the reasons stated above, defendant's motion to dismiss is granted as to counts two and three. Plaintiff's motion to transfer is denied.

■ As to count one, plaintiff shall show cause, on or before Friday, February 3, 1995, why the court should not dismiss that count for failure to state a claim upon which relief may be granted, *i.e.,* plaintiff's failure to allege that its claims were "superior or equal" to the CCC liens, or to provide any evidence admissible at trial that could establish such priority. Defendant's response shall be due within fourteen days thereafter. If either party relies on factual matters beyond the pleadings[4] to, *ie.g.,* establish when the State's secured interest or lien attached, whether such interest was "equal or superior" to CCC's secured liens, or whether the State was an intended third-party beneficiary who may recover damages in this court, it shall move for summary judgment.

---

4. Documents referred to and relied upon in the complaint, such as the order approving the sale, the settlement agreements, and the orders approving those agreements, are not beyond the pleadings and may be considered by the court in deciding whether to dismiss the complaint for

failure to state a claim. *Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.,* 998 F.2d 1192, 1196 (3rd Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993).