STATE OF MONTANA, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–108C.

United States Court of Federal Claims.

May 10, 1995.[1]

---

**1.** The order originally issued on April 20, 1995 is reissued for publication, with minor editorial changes, at defendant's request.

Sidney R. Thomas, Moulton, Bellingham, Longo & Mather, Billings, MT, for plaintiff.

Ross Daryl Cooper, U.S. Dept. of Justice, Comm. Lit. Branch, Washington, DC, for defendant.

### Order

WEINSTEIN, Judge.

Defendant moved to dismiss this action on the grounds, *inter alia,* that the contract on which plaintiff the State of Montana brought suit, a settlement agreement between the bankrupt Great Western Sugar Company ("Great Western" or "the Company") and some of its creditors, including the Commodity Credit Corporation (CCC), but not including the State, was not a third-party beneficiary contract. The court denied the motion, holding that, while the agreement appeared on its face to be a third-party beneficiary contract for the benefit of creditors whose claims against Great Western were equal or superior to the CCC's claim, plaintiff had not stated a claim to be such a creditor, *State of Montana v. United States,* 33 Fed.Cl. 82, 87 (1995). The court therefore ordered additional briefing regarding whether the State's claim was equal or superior to that of the CCC. *Id.* at 88. After briefing and oral argument on the question, the court grants summary judgment in favor of defendant.

### Background

The Great Western Sugar Company ("Great Western" or "the Company"), operated sugar processing factories in Billings, Montana, and other locations. It was subject to the Montana Workers' Compensation Act (Act), and chose, as the Act permits, to self-insure its workers' compensation risk. Stip. ¶¶ 6–7.[2]

---

**2.** "Stip." refers to the stipulated facts submitted to the district court. "Mot. App." refers to the appendix to the motion to dismiss. "Rep. App." refers to the appendix to the reply to the opposi-tion to the motion to dismiss. "Supp. App." refers to the appendix to defendant's brief on lien priority.

Between October 1984 and January 1985, the Company received loans under the Commodity Credit Corporation's sugar price support program. *See* Supp.App. 4–19. The CCC filed a financing statement (describing the collateral as "sugar") with the Montana secretary of state on October 24, 1984, Stip. Ex.C. The parties executed four security agreements between November 1984 and January 1985, each stating the quantities and locations, including bin numbers, of the refined beet sugar over which the CCC acquired a security interest. *See, e.g.,* Supp. App. 4, 6, 8–10.

In February 1985, the Company's financial situation deteriorated to the point that its bank stopped honoring Company checks; among the checks returned for insufficient funds were checks for benefits under the Montana Workers' Compensation Act. *See* Stip.Ex.D. Great Western filed a petition under Chapter 11 of the Bankruptcy Code in the United States District Court for the Northern District of Texas on March 7, 1985.

On March 29, 1985, the bankruptcy court authorized the sale of a portion of the Company's assets, including sugar produced in its Montana operation, "free and clear of any mortgage, pledge, claim, lien, charge, encumbrance, security interest or other rights of any kind to any entity." Mot.App. 26. The proceeds of the sugar sale ("Sugar Proceeds") became part of the bankruptcy estate, and a group of secured bank lenders ("Bank Lenders") asserted first liens on the proceeds, as did the State, the CCC, and other creditors. Mot.App. 9; Rep.App. 1.

On December 23, 1985, the bankruptcy court approved an agreement among Great Western, the CCC, and the Bank Lenders, settling the claims of the CCC and the Bank Lenders. The Bank Lenders received the non-sugar proceeds, thus allowing Great Western to pay the CCC's claim with Sugar Proceeds, while the CCC agreed to release any and all of its claims against the Company and the Bank Lenders, and to indemnify and hold harmless the latter for any claims (1) "superior or equal" to the CCC's liens against the Sugar Proceeds (2) that might be asserted against the Bank Lenders by third parties. Mot.App. 13. The order approving the agreement provided,

> Upon the payments by Great Western to the CCC under the Compromise Settlement Agreement, the CCC shall have obligations with respect to the [Sugar Proceeds] identical to those from which the Bank Lenders are hereby released, and any entity having asserted a timely and proper Objection based on a competing legal or equitable claim to all or any part of [the Sugar Proceeds] shall assert its claim against the CCC, and not against the Bank Lenders....

Mot.App. 7.

In 1987, the State settled its claims against Great Western and the Bank Lenders, but expressly reserved its claims against the CCC. Stip.Ex.Q at 6. In 1992, the State settled claims filed in state court for workers' compensation benefits not paid due to Great Western's bankruptcy, for a total amount of $667,759.53. Stip.Ex.S. In 1993, the United States District Court for the District of Montana transferred to this court the State's suit, filed there in 1991, against the United States and the CCC. Mot.App. 46–47.

### Discussion

■ Federal law governs the priority of liens stemming from federal lending programs. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979); *Marine Midland Bank v. United States,* 231 Ct.Cl. 496, 687 F.2d 395, 404 (1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983). In determining whether, as a matter of judicial policy, federal courts should adopt state law or fashion a nationwide federal rule, the Supreme Court in *Kimbell Foods* considered the need to be solicitous of the specific objectives of the federal program by fashioning a uniform nationwide rule against the disruption of commercial relationships predicated on state law. *Kimbell Foods, Inc.,* 440 U.S. at 728–29, 99 S.Ct. at 1459; *accord McCall Stock Farms, Inc. v. United States,* 14 F.3d 1562, 1569 (Fed.Cir.1993).

The need for judicial determination of which law should be utilized exists only "in the absence of a federal statute setting prior-

ities." *Kimbell Foods, Inc.,* 440 U.S. at 718, 99 S.Ct. at 1453; *see also, e.g., id.* at 726, 99 S.Ct. at 1457 (" '[i]n the absence of an applicable Act of Congress' ") (quoting *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943)), 440 U.S. at 740, 99 S.Ct. at 1464 ("absent a congressional directive").

■ Unlike in *Kimbell Foods,* where it was clear that the SBA expected state law governing perfection of security interests to apply, as shown in federal regulations expressly incorporating state law and mandating compliance with state commercial law procedures, *see id.* at 729–31, the statute and regulations here mandate that lien priority be determined by the federal law governing ·the program. A clear congressional directive regarding the CCC's sugar program is contained in 15 U.S.C. § 714b(g), which provides,

> State and local regulatory laws or rules shall not be applicable with respect to contracts or agreements of the [CCC] or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not be applicable, or *to the extent that such laws or rules are inconsistent with such contracts or agreements.*

15 U.S.C. § 714b(g) (emphasis added). The security agreements with Great Western provide, "[Great Western] represents and warrants that ... (v) the collateral and commodity is free and clear of all liens, security interests, and encumbrances, including landlord's liens, except in favor of the lienholders from whom waivers have been secured." *E.g.,* Supp.App. 5. A lien, security interest, or encumbrance superior to that of the CCC and created by State laws or rules therefore would be inconsistent with the agreement and, as such, is preempted by 15 U.S.C. § 714b(g).

A CCC regulation for the crop years at issue provides,

> Waivers of liens or encumbrances on the sugar pledged as loan security to the CCC must be obtained to *protect fully the inter-est of the CCC.* A lienholder, in lieu of waiving a prior lien on sugar, may execute with CCC a Lienholder's Subordination Agreement (Form CCC–864) in which the lienholder's security interest is subordinated to the rights of the CCC. *No liens or encumbrances shall be placed on the sugar pledged as collateral after the loan is approved.*

7 C.F.R. § 1435.121(d) (1989) [3] (emphasis added). Like the provision in the security agreement, this regulation evidences CCC's clear intent both to proscribe the creation of security interests superior to the CCC's lien and to deny loans to the sugar processors not fully protecting the CCC's liens' priority.

■ When "there is valid non-judicial federal law, in the form of an agency regulation promulgated pursuant to an act of Congress, that is applicable to the legal question presented," there is no call for judicial crafting of the contours of a federal law. *United States v. Walter Dunlap & Sons, Inc.,* 800 F.2d 1232, 1240 (3rd Cir.1986) (Adams, J., concurring); *accord Whitehead v. Derwinski,* 904 F.2d 1362, 1370 (9th Cir.1990) (stating that the *Kimbell Foods* test applies "[w]hen no distinct federal statute or properly promulgated regulations apply and displace existing state law"); *Chicago Title Ins. Co. v. Sherred Village Assocs.,* 708 F.2d 804, 808 (1st Cir.1983); *see also Walter Dunlap & Sons, Inc.,* 800 F.2d at 1241 ("The judicial role outlined in *Clearfield Trust* and *Kimbell Foods* ... is circumscribed by the doctrines of federalism and separation of powers. The *Kimbell Foods* test comes into play only when the judiciary is called upon to supply the substance of federal law because none has been furnished by other appropriate federal law-making authorities."). Applying the *Kimbell Foods* test in the face of valid regulations would in effect nullify them. *Walter Dunlap & Sons,* 800 F.2d at 1245. *Kimbell Foods* did not foreclose reference to federal regulations, because no regulations setting priorities were involved in that case. *Id.* at 1241–42.

---

**3.** This is the last year in which the regulations for the 1983–85 sugar program appeared in the Code of Federal Regulations. The analogous provision for subsequent years, slightly revised, now appears at 7 C.F.R. § 1435.12(d).

Thus, under both 15 U.S.C. § 714b(g) and 7 C.F.R. § 1435.121, the CCC's lien remains superior to that of the State.

◼ Moreover, even if state law provided the federal rule of decision, *see, e.g., United States v. Currituck Grain, Inc.,* 6 F.3d 200, 206–07 (4th Cir.1993) ("The Court in *Kimbell Foods* held that state commercial law should be adopted as the federal rule of decision in [lien priority] disputes involving the rights of federal agencies acting as lenders."); *but see Buckeye Sugars, Inc. v. Commodity Credit Corp.,* 744 F.2d 1240, 1243–44 (6th Cir.1984) (holding that federal law governs whether CCC had to remit to borrower surplus proceeds from sale of collateral), plaintiff's lien still would not become equal or superior to the CCC's prior perfected security interest.[4]

Plaintiff contends that it acquired a lien against Great Western's Montana property in February 1985, when the Company's financial situation deteriorated and it failed to honor its workers' compensation obligations, under Mont.Code Ann. § 39–71–408, which provides,

> In case of bankruptcy, insolvency, liquidation, or the failure of an employer or insurer to meet any obligations imposed by this chapter, every liability which may be due under this chapter shall constitute a first lien upon any deposit made by such employer or insurer, and if such deposit shall not be sufficient to secure the payment of such liability in the manner and at the times provided for in this chapter, *the deficiency shall be a lien upon all the property of such employer or insurer within this state and shall be prorated with other lienable claims and shall have preference over the claim of any creditor or creditors of such employer or insurer except the claims of other lienors.*

Mont.Code Ann. § 39–71–408 (emphasis added).

◼ Resolution of this dispute under state law depends upon whether the state statute [5] makes the State's lien superior to a prior perfected security interest. Plaintiff argues that both its claim and the CCC's are "lienable," and thus must be prorated. Defendant argues that the CCC's prior perfected security interest is not a "lienable claim," but, rather, a lien, and therefore that the CCC is an "other lienor[ ]" over which the State does not have priority. There are no published decisions interpreting this language, which has no analogue in any other Montana stat-

---

4. The court rejects plaintiff's suggestions that the CCC did not in fact have a perfected security interest. A security interest was created because the security agreements, stating the quantities and locations of the sugar, adequately described the collateral under Mont.Code Ann. § 30–9–110 (a description "is sufficient whether or not it is specific if it reasonably identifies what is described") (identical to Uniform Commercial Code (U.C.C.) § 9–110), *see also First Nat'l Bank v. First Sec. Bank,* 222 Mont. 118, 721 P.2d 1270, 1273 (1986) ("the description in the security agreement must reasonably lead the impartial observer to the collateral in question") (citing James J. White & Robert S. Summers, *Uniform Commercial Code* 787–88 (1972)). *In re Hubka,* 64 B.R. 473, 476 (Bankr.D.Neb.1986); *In re George B. Kerr, Inc.,* 25 B.R. 2, 5–6 (Bankr.D.S.C. 1981), *aff'd without op.,* 696 F.2d 990 (4th Cir. 1982). That interest was perfected, despite the fact that only one financing statement was filed, before the security agreements, because a financing statement may be filed before the security agreement is executed, Mont.Code Ann. § 30–9–402(1) (identical in pertinent part to U.C.C. § 9–402(1)), and is effective to perfect security interests in the same collateral created by later security agreements. *United States v. Fullpail Cattle Sales, Inc.,* 640 F.Supp. 976, 981 (E.D.Wis.1986)

(citing *In re Kendrick & King Lumber, Inc.,* 14 B.R. 764, 32 U.C.C.Rep.Serv. (Callaghan) 575, 579–80 (W.D.Okla.1981); *In re Gilchrist Co.,* 403 F.Supp. 197, 16 U.C.C.Rep.Serv. (Callaghan) 1384, 1387–89 (E.D.Pa.1975)); 9 Ronald A. Anderson, *Uniform Commercial Code* § 9–303:4, at 184 (1994) (citing *In re Merriman,* 1967 WL 8946, 4 U.C.C.Rep.Serv. (Callaghan) 234 (Bankr. S.D. Ohio 1967)).

5. The court rejects plaintiff's arguments that its lien is entitled to priority under other statutes, as either a mechanic's or artisan's lien, or a tax lien. The first argument fails under Mont.Code Ann. § 30–9–310 (identical to U.C.C. § 9–310) because, *inter alia,* plaintiff does not possess any of the liened sugar. *See, e.g., Church Bros. Body Serv., Inc. v. Merchants Nat'l Bank & Trust Co.,* 559 N.E.2d 328, 330 (Ind.App.1990); *ITT Comm. Fin. Corp. v. Madisonville Recapping Co.,* 793 S.W.2d 849, 852 (Ky.App.1990). The second argument fails because, even if Great Western's workers' compensation liability should be deemed a tax, the remedy provided by Mont. Code Ann. § 39–71–408 is exclusive; Montana's general tax lien statute, Mont.Code Ann. § 15–16–401, does not apply. *State ex rel. Tillman v. District Court,* 101 Mont. 176, 53 P.2d 107, 110 (1936); *State ex rel. Spokane & E. Trust Co. v. Nicholson,* 74 Mont. 346, 240 P. 837, 838 (1925).

ute. The statute should be interpreted to give each clause meaning, without rendering the statute internally inconsistent. *Darby Spar, Ltd. v. Department of Revenue,* 217 Mont. 376, 705 P.2d 111, 113 (1985); *McClanathan v. Smith,* 186 Mont. 56, 606 P.2d 507, 510 (1980). The court therefore concludes that only *unperfected* security interests are "lienable claims" with which the State's claim is prorated, but the statute gives priority over the State's claim to "lienors," *i.e.,* holders of *perfected* security interests.

Accordingly, because the CCC's security interest was perfected prior to the time when the State's claim arose and was perfected, plaintiff was not an intended beneficiary of the settlement agreement, and therefore, as stated in the court's previous opinion, is not entitled to sue in this court. *State of Montana,* 33 Fed.Cl. at 88, No. 94–108C, 1995 U.S. Claims LEXIS 43, at * 14 (1995).

█ Furthermore, if the State's lien were equal or superior to the CCC's, the agreement to satisfy that lien would be unauthorized, and therefore invalid. As noted above, 15 U.S.C. § 714b(g) and 7 C.F.R. § 1435.121(d) require the CCC to obtain a security interest in the sugar superior to all others. The CCC official who settled the CCC's dispute with Great Western and the Bank Lenders therefore was not authorized to enter into an agreement that conflicted with the admonition to "protect fully the interest of the CCC," as required by 7 C.F.R. 1435.12. The government is not bound by acts of its agents that exceed the scope of their authority. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 419–20, 110 S.Ct. 2465, 2469, 110 L.Ed.2d 387 (1990); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *S.J. Amoroso Constr. Co. v. United States,* 12 F.3d 1072, 1075 (Fed.Cir.1993).

### Conclusion

For the reasons stated above, the court grants summary judgment in favor of defendant. The Clerk is ordered to dismiss the complaint.